Donald MACK, Earl Hooks each individually, and on behalf of all others similarly situated, Plaintiffs,

v.

GENERAL ELECTRIC COMPANY, a New York Corporation, Defendant.

Civ. A. No. 69-2653.

United States District Court,
E. D. Pennsylvania.

June 28, 1971.

William T. Coleman, Jr., John F. Smith, III, Dilworth, Paxson, Kalish, Levy & Coleman, Philadelphia, Pa., for plaintiffs.

Lewis H. Van Dusen, Jr., Morris R. Brooke, Drinker, Biddle & Reath, Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, District Judge.

Plaintiffs have brought this action on behalf of themselves and the class they propose to represent alleging racially discriminatory employment policies by defendant. Their rights are alleged to arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and Section 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981. Jurisdiction is founded on § 706(f) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f) and 28 U.S.C. § 1343(4). The complaint seeks both injunctive relief and damages. Plaintiffs have moved for the designation of this action as a class action on behalf of all Negroes employed at General Electric's ("G.E.") Elmwood Avenue Plant in Philadelphia, those who have been employed there and/or who have unsuccessfully sought employment there from July 2, 1965, to the present. They allege that the following questions of law and fact are common to the class:

(a) Refusal to hire Negroes; (b) refusal to upgrade and promote Negroes; (c) refusal to accept Negro employes in the management trainee program, or any of its other five training programs; (d) refusal to consider Negroes for promotions or placements on management trainee list; (e) refusal to hire women of Negro race; (f) refusal to upgrade women of Negro race; (g) refusal to promote Negroes to supervisory positions; (h) refusal to apply standards and requirements to other employes when they were applied to Negro employes, especially after an in-plant cross-burning incident which took place during working hours, in an area where Negro employes were working; (i) the

disqualification of employe-applicants who have an arrest record; (j) the discriminatory application of employment criteria relating to prior arrest records as a basis for rejecting black and accepting white employes; (k) the maintenance and administration of a seniority system which discriminates against Negro employes and which has the effect of perpetuating prior discrimination; (l) the assignment of Negro women employes to arduous work to which white women are not assigned; (m) the recruitment of future employes at all white and predominantly white high schools, trade schools, and colleges, and the refusal to recruit at high schools, trade schools and colleges in Negro, and predominantly Negro areas; (n) the use of reprisals against former Negro employes, including, but not limited to, blacklisting, poor and demeaning references, refusal to give references and excessive delay in answering referral letters; (o) the use of reprisals against former Negro employes, who while employed at the Elmwood Avenue plant sought and continued to seek both by informal and legal methods to eliminate G. E.'s discriminatory practices.

Plaintiff Mack is a Negro who was employed by G.E. from August 15, 1963 until August 31, 1967. His individual complaints include: that he was denied an upgrade in position in December, 1964; that he was forced to remain in an arduous supply shipper job by his supervisors after he had been accepted for a more desirable position; that he was denied placement in a manager trainee program in March, 1965, and January, 1966; and that he was informed, after complaining to the government about discrimination at G. E., that his future opportunities with the company would be limited. While Mack never filed a formal charge with the EEOC, he did sign a complaining petition which accompanied an individual letter of March 3, 1966 to the President. The petition was signed by fifteen other employes and treated by the EEOC as a charge.

Plaintiff Hooks, also a Negro, was employed by defendant from March 28, 1956 to June 30, 1969, following a leave of absence which began on December 30, 1968. His individual claim is that in December, 1965, he was denied an upgrade in position because of his race. Hooks also signed the petition to the President, and on May 15, 1966 he filed a formal charge, under oath, with the EEOC.

Rule 23(a) provides:

"Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

There is no doubt that the class action proposed by plaintiffs satisfies the requirements of Rule 23(a) (1). The core question we must face is whether the requirements of (a) (2), (a) (3) and (a) (4) are met. The resolution of this question, as we see it, depends on whether the discriminations alleged in the complaint are regarded as individual discriminations against proposed members of the class or as manifestations of a broad, sweeping and all-pervasive policy of an imbedded and total racial employment discrimination. It is true, of course, that since employes are human, they are subject to human variances as to skill, industry and aptitude. It is also true that there are differences as to seniority and job requirements. However, we think that a narrow construction of Title VII would unduly restrict, if not frustrate, the Congressional purpose reflected in the passage of this legislation. *See, e. g.*, Developments in the Law: Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L.Rev.

1109, 1113–19 (March, 1971) (hereinafter cited as *"Developments"*). Certainly, it would be cumbersome, if not totally unworkable, to require each Negro at G. E., or each Negro refused employment at G.E., to seek redress for alleged grievances individually. Such a course would put an intolerable load on the district court. In addition, we cannot blind ourself to the reality that if, indeed, racial discrimination does exist at G.E.,[1] the brave soul who dared to complain of it could well be subjected to reprisals.[2]

Courts that have faced the problem confronting us have reacted variously. In Hyatt v. United Aircraft Corp., 50 F.R.D. 242 (Conn.1970), plaintiff, a Negro, sought to bring a class action on behalf of Negroes who were then employed, had been employed or might thereafter have been employed by defendant. The class action was denied. The court held that the requirements of (a) (2)–(4) were not fulfilled. Illustrative of the court's approach is the following (p. 247):

"Assuming arguendo that plaintiff could be said to have alleged, as to him, discrimination in promotion and compensation, there is a total absence of specification of such discrimination as to other members of the class. * * *"

*See also* Hackett v. McGuire Bros., Inc., 321 F.Supp. 312 (E.D.Pa.1970) rev'd, 445 F.2d 442 (C.A. 3, filed July 8, 1971); Smith v. North American Rockwell Corp., 50 F.R.D. 515 (N.D.Okl.1970); Burney v. North American Rockwell Corp., 302 F.Supp. 86 (C.D.Cal.1969).

However, the courts of the Fifth Circuit have adopted a different view, perhaps best illustrated by Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122 (C.A.5, 1969). In *Johnson* the suit was brought by an employe allegedly discharged because of his race, who sought to represent all Negroes seeking equal employment opportunity with the defendant. The district court held that the class should be restricted to persons who had been discharged because of their race. In reversing, the court said at page 1124:

"The first point raised by appellant involves the district court's narrowing of the class, i. e., that the appellant, a discharged Negro employee, could only represent other discharged Negro employees. This was error as it is clear from the pleadings that the scope of appellant's suit is an 'across the board' attack on unequal employment practices alleged to have been committed by the appellee pursuant to its policy of racial discrimination. * * * While it is true, as the lower court points out, that there are different factual questions with regard to different employees, it is also true that the 'Damoclean threat of a racially discriminatory policy hangs over the racial class [and] is a question of fact common to all members of the class.' Hall v. Werthan Bag Corp., M.D.Tenn.1966, 251 F.Supp. 184. * * * *"

*See also* Tipler v. E. I. duPont deNemours & Co., 443 F.2d 125 (C.A.6, filed May 27, 1971); Jenkins v. United Gas Corp., 400 F.2d 28 (C.A.5, 1968); Wilson v. Monsanto Co., 315 F.Supp. 977 (E.D.La.1970); Hall v. Werthan Bag Corp., 251 F.Supp. 184 (M.D.Tenn. 1966).

In *Hyatt, supra*, 50 F.R.D. at page 248, the court "respectfully decline[d]" the invitation to accept the Fifth Circuit's "across the board" concept. We do not so decline. While discrimination exists and has existed nationwide, because discrimination has been more overt in the states of the Fifth Circuit that court has become very experienced in and sensitive to the subtle problems of racial discrimination. Congress has taken giant strides to legislate bias out of our economy. Given the tools that Con-

1. We must emphasize here that we make no judgment on the merits of plaintiffs' assertions.

2. *Cf.* Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122 (C.A.5, 1969).

gress has now provided, courts would be remiss if they were not used to the fullest extent. The broad Congressional purpose, expressed in the civil rights acts, of eliminating job bias can well be effectuated by allowing any Negro claiming that an employer has discriminated against him on racial grounds to sue to end all that employer's racial discrimination. In this manner, the "Fifth Circuit's 'across the board' class action concept goes a long way toward effectuating the public interest." *Developments, supra,* at 1220. Finally, the across-the-board approach allows those who need not fear adverse job consequences to sue to end discrimination against those who might fear to bring such suits, such as present employes concerned about job security.

█ Taking the across-the-board approach, we see that these plaintiffs meet the requirements of subsections (2), (3) and (4) of Rule 23(a). Since a permeating policy of racial discrimination is alleged, there can be little doubt that there are questions of law and fact common to all class members and that the claims of the Negro plaintiffs that they have been discriminated against will be typical of the claims of other Negroes. If the defendant does discriminate on racial grounds, it would seem that every Negro will be affected similarly. Plaintiffs fairly and adequately represent the members of the class. They have counsel experienced in handling racial matters, and their history of claims against G. E. indicates the lack of collusion between them and the company.[3] In addition, being familiar with G. E. employment practices and being free from any possible coercive influence of G. E. management, they are better situated than either job applicants or present em-

ployes to present an intelligent and strongly adverse case against G. E.'s alleged discriminatory practices. We thus find and hold that plaintiffs have satisfied the requirements of Rule 23(a).

Having found the prerequisites to class action satisfied here, we hold also that the action may be maintained as a class action under Rule 23(b)(3). Our discussion above of why we regard the discrimination alleged as manifestations of a broad policy of racial discrimination explains why we find that questions of law and fact common to members of the class predominate over any questions affecting only individual members, and conclude that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## JURISDICTIONAL OBSTACLES

Defendant finally argues that the plaintiffs have not complied with the jurisdictional requirements of the Civil Rights Act of 1964, suggesting that the possible jurisdictional flaws in plaintiffs' individual complaints detract from the adequacy of their representation of the class. While we are reluctant to rule on jurisdictional issues raised in such a back-door fashion, rather than by a motion to dismiss or for summary judgment, we are also reluctant to hold that Mack and Hooks can maintain their action as a class action if they may be thrown out of court before the issues of discrimination are litigated on the merits, with possible *res judicata* effect on the class. *Cf. Developments, supra,* at 1221.

If any of the individual claims of Mack and Hooks can surmount the procedural roadblocks which defendant insists bar the road to any decision on the

---

3. The Second Circuit has stressed two criteria useful in determining whether a litigant is an adequate representative of the class: " * * * To be sure, an essential concomitant of adequate representation is that the party's attorney be qualified, experienced and generally able to conduct the proposed litigation. Addi-

tionally, it is necessary to eliminate so far as possible the likelihood that the litigants are involved in a collusive suit or that plaintiff has interests antagonistic to those of the remainder of the class. * * * " Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (C.A.2, 1968).

merits here, they can proceed as representatives of the class. Defendant alleges that Mack never properly presented his claims to the EEOC and thus is barred from raising them in court, and that Hooks cannot raise his claim because he settled his grievance through the union grievance procedure.[4]

First, defendant argues that Mack did not present any of his claims of discriminatory treatment to the EEOC within 90 days of such treatment, as is required by 42 U.S.C. § 2000e-5(d), (f). In response to defendant's interrogatories, Mack specified one of his complaints as being that he had been discriminatorily denied a position in G. E.'s manager trainee program in January, 1966. Mack's letter of March 3, 1966, with the accompanying petition, presented a charge of discrimination to the EEOC within 90 days of that date. The question we must confront is whether the charges presented to the EEOC at that time should be regarded as including one of Mack's individual complaints for the purpose of allowing him to present that claim in this civil action. The original charge, in the form of a petition signed by 16 G. E. employes and forwarded to the EEOC, read in relevant part:

"We * * * petition the President of the United States to authorize an investigation into the upgrading policies of this division of the company. We strongly feel that discrimination, because of race, is being practiced, and feel that a redress of this grievance is in order."

Mack's complaint about denial of placement in the manager trainee program is essentially a complaint about the upgrading, or promotional, policies of the defendant. Both parties seem to agree that the Fifth Circuit has laid down the applicable standard governing the permissible scope of the complaint in a civil action under Title VII. That court, in Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (1970), said:

" * * * [I]t is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."

See also Tipler v. E. I. duPont deNemours & Co., supra, 443 F.2d at p. 131; King v. Georgia Power Co., 295 F.Supp. 943, 947 (N.D.Ga.1968); cf. Developments, supra, at 1218. Where 16 employes have complained of discrimination in upgrading, we consider it reasonable to expect the EEOC to investigate alleged incidents of promotional discrimination. If the EEOC is willing to accept the admittedly sketchy petition of Mack and his co-workers as sufficient to assign case numbers to each petitioner and begin an investigation, it is difficult to believe that it would not at least interview them to discover the individual bases for their complaint. In fact, it appears from the findings of fact made by the EEOC regional director that Mack's relative lack of success in gaining access to the manager trainee program was actually considered by the investigators.[5] We therefore conclude that Mack can maintain an action on at least one of his individual claims and that the adequacy of his representation of the class will not be lessened by jurisdictional obstacles.

Second, defendant argues that plaintiff Hooks is barred from raising his individual claim in court because he settled his only complaint through union grievance procedures in February, 1966.[6]

---

4. Hooks disputes the assertion that he settled his grievance.

5. The findings of fact relevant to Mack specifically reported that a Caucasian employe with less seniority than Mack had been transferred to the manager trainee program in 1966.

6. Defendants have mentioned, but not pressed, the argument that Hooks too did not present his claim of discriminatory treatment to the EEOC within 90 days. For the reasons discussed above in regard to Mack's claim, we consider the charge of the petition sufficient presentation to the EEOC, if brought within

Even assuming that Hooks did settle his claim, we do not agree with defendant's contention. The Fifth and Seventh Circuits have held that grievance and arbitration procedures, carried through to a final determination, do not constitute a binding election of remedies which precludes subsequent suit in the federal courts. Hutchings v. United States Industries, Inc., 428 F.2d 303 (C.A.5, 1970); Bowe v. Colgate-Palmolive Co., 416 F.2d 711 (C.A.7, 1969).[7] The Sixth Circuit has held otherwise. Dewey v. Reynolds Metals Co., 429 F.2d 324, petition for rehearing denied, 429 F.2d 334 (1970), cert. granted, 400 U.S. 1008, 91 S.Ct. 566, 27 L.Ed.2d 621 (1971). The Third Circuit has suggested it supports the majority view by ruling that where a plaintiff seeks injunctive relief against an allegedly continuing course of discrimination unaffected by arbitration of the specific instance which motivated the action, as Hooks does here, his action is not moot. Fekete v. United States Steel Corp., 424 F.2d 331, 333n. 3 (1970). Additionally, there must be some question as to the applicability of *Dewey* here, since the purported settlement of Hooks' case did not reach the arbitration stage. Thus, we do not run the risk of relitigating an issue already decided by an arbitrator. *Cf.* Hutchings, *supra*, 428 F.2d at 314. If final arbitration would not preclude Hooks from raising his claim of discrimination before the EEOC and the federal courts, we conclude that termination of union grievance proceedings at an earlier, less formal stage likewise should not have

that effect. The adequacy of Hooks' class representation will also not be lessened by jurisdictional obstacles.

The parties will submit an appropriate Order in accordance with the foregoing opinion.

---

the time limit. The particular discrimination Hooks complained of occurred in December, 1965. If it occurred anytime after December 3, 1965, as the regional director's findings of fact suggest it did, then it would seem the petition and letter of March 3, 1966, fell within the 90-day limit. Regardless, the running of the 90-day limit has been held to be suspended while a complainant invokes his contractual grievance remedies. Culpepper v. Reynolds Metals Co., 421 F.2d 888, 891 (C.A.5, 1970).

In addition, we think a denial of upgrading operates to discriminate against an

employe at least until he is upgraded as he deserves and we thus regard a discriminatory failure to upgrade as a continuing violation of Title VII. The 90-day limit should be measured from the time the discrimination ends, which in this case was no sooner than February, 1966.

7. The Fifth Circuit has also held that, after suit is filed, the settlement of an employe's particular complaint of discriminatory failure to promote does not moot the suit. Jenkins v. United Gas Corp., 400 F.2d 28 (1968).