**Constance MARTIN, on behalf of herself and all others similarly situated**

v.

**The EASTON PUBLISHING COMPANY, a corporation, et al.**

**Civ. A. No. 76–2899.**

United States District Court, E. D. Pennsylvania.

Feb. 25, 1977.

---

**10.** Plaintiff does not claim that there was insufficient evidence to support the argument that Casa Milano was at fault.

S. P. McGuire, West Chester, Pa., for plaintiff.

Roland Morris, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

This suit is brought by plaintiff on behalf of herself and all others similarly situated against the defendant publishing corporation and various of its officers and employees under and pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Equal Pay Act of 1963, 29 U.S.C. §§ 206(d), 216(b), 42 U.S.C. § 1985(3) and 42 U.S.C. § 1988. Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e–5(f), 28 U.S.C. §§ 1343(1), 1331(a), and 1337.

She alleges in her complaint that she was hired by the defendant on October 10, 1972, as a part-time news staff employee of The Express, connected with the family section, primarily to write feature stories, as well as perform certain routine job functions, such as rewrites, headline writing and editing. On September 10, 1973, plaintiff was given full-time status with the family section, where she remained until her transfer to the daytime Metro news section on May 14, 1974, a more demanding job.

On February 4, 1975, during her employment tenure on the daytime Metro news staff, plaintiff was assigned a general news story by defendant Hairston for immediate preparation and to be published in the February 4 editions of The Express. Plaintiff conscientiously applied herself to compiling the necessary technical information and conducting telephone interviews. Although her task was complicated by the sudden illness and hospitalization of her minor daughter on the evening of February 3, plaintiff completed her special assignment, producing a high quality product, approximately 2:30 A.M. the morning of February 4, 1975, at The Express offices, in time for newspaper inclusion as per schedule, and requesting by letter to be relieved from the morning's police report.

On February 4, 1975, plaintiff reported to work assuming that she had been relieved of that morning's police report, in light of the previous night's schedule and the town council meeting which plaintiff was obligated to attend the evening of February 4. Defendant Hairston at that time, however, denied plaintiff's request, but later agreed to relieve her from responsibility for the February 5 police news, which would be reassigned, and allow an 8:30 A.M. arrival at work. The February 4 town council meeting, involving Phillipsburg, New Jersey, budget deliberations, continued until approximately midnight, at which time plaintiff returned to The Express offices and left a message for defendant Hairston that Phillipsburg Mayor Anthony Stillo had instructed plaintiff not to report the council discussion. Plaintiff had previously been instructed by defendant MacNeil to honor such requests by Mayor Stillo. On February 5, 1976, plaintiff reported to work at 8:30 A.M., as arranged with defendant Hairston, only to be publicly confronted in an abusive, bullying manner, by defendant MacNeil who expressed anger at lack of a news story based on the meeting of the previous evening, refused to even hear an explanation, and ordered plaintiff to do the police report, which had been "forgotten" by the reporter to whom it had been reas-

signed. Despite a freezing rain creating dangerous road conditions, and prior exemption from such duty by defendant Hairston, which was repeated to defendant Mac-Neil, plaintiff obeyed the direction of defendant MacNeil.

Following this assignment, and as a result of the above enumerated events, leaving her upset and tense, plaintiff requested a meeting with defendant Jodon, MacNeil and Hairston's superior, to discuss her grievance against them. Defendant Jodon, instead of discussing plaintiff's grievance, interrogated and badgered her for an hour about her "attitudes". Thereafter, plaintiff responded:

> "I've gotten the impression that if you're willing to work hard, and put in a little extra effort to do a good job, and come through in the clutch, you can be exploited."

This statement resulted in plaintiff's summary firing by defendant Jodon, who then did abusively and maliciously, and in the presence of Hairston and MacNeil, state that plaintiff was "unsuited for newspaper work on this or any other newspaper", an allegation which is alleged to be demonstrably and knowingly false and seriously denigrates plaintiff's professional reputation and competence. Plaintiff asserts that the events of February 3 through 5, 1975, including her job termination, reflected but a few examples of the discriminatory treatment, based solely on sex, to which she was continually subject and which included but were not limited to more difficult scheduling than all of her male peers; unfair and undeserved public reprimands, constituting harassment and bullying, and higher standards of subordination than male news staff employees. (See paragraphs 1, 13, 14, 15 and 16 of complaint.) She alleges sex discriminatory "patterns and practices" relating to compensation, job assignment, promotion "and other conditions". (Paragraph 17 of complaint.) These purely conclusory allegations are supported only by a factual allegation that her male successor was hired at a "substantially higher salary" with "regular salary review". (See paragraph 17(a) of complaint.) She then alleges the production of more articles, more "column inches" and, therefore, more volume than her successor. (See paragraph 17(b) and (c) of complaint.) However, it is not alleged that volume, either in number of articles or column inches, was or is a proper or accepted measure of employee efficiency and performance either in defendant's organization or like publishing organizations, or that it was discriminatorily applied to male employees.[1] Neither is it factually alleged that any other female was discharged or otherwise subjected to the same treatment.[2]

Plaintiff seeks class action determination. Thus, this is not a motion for summary judgment and the defendant's factual assertions, although uncontradicted, are of less importance to the determination than the factual allegations in the complaint. We find few *factual* allegations in the complaint and plaintiff has failed to submit any affidavits or other response to the affidavits and material submitted by defendant in opposition to plaintiff's motion for class action determination. She asserts factually that she was assigned a "story", the completion of which was complicated by the illness and hospitalization of her daughter; that she completed the story, left her office at 2:30 A.M. and left behind a letter request to be relieved of her next morning's schedule. (Paragraph 14 of complaint.) She reported to work the next morning *assuming* that she had been relieved of certain duties to be performed *that* morning and certain additional duties to be performed that evening (see paragraph 15 of complaint). In fact

---

1. Factual affidavits submitted by defendants, to which plaintiff has not responded with any counter-affidavits or other allegations of fact suggest that plaintiff wrote longer articles than instructed on subjects to which the defendant allotted lesser space.

2. Factual affidavits submitted by the defendant which have evoked no factual responses or denials by plaintiff indicate that plaintiff ignored instructions, concentrated upon subjects in which she was interested and failed to give priorities to items in which she was less interested thus failing to meet certain publishing deadlines.

she had *not* been so relieved and it was, as she stated, an assumption on her part. She then alleges conflicting orders as to her obligation to report a certain town council meeting which led to a reprimand, and a substitute assignment, the completion of which was hindered by "dangerous road conditions". As a result she became "upset and tense", requested a meeting with certain superiors at which there was a verbal exchange in the course of which she was dismissed.[3] She thus alleges facts which are peculiarly personal to her. She alleges that she worked late, that her daughter was ill and hospitalized, that she sought relief from the next morning's assignments and assumed she had it, that as to a particular evening assignment her orders were conflicting, that she was subjected to "dangerous road conditions", that she became upset and tense, that she was criticized by her superiors and ultimately dismissed. They are not the type of allegation applicable to a class and she asserts no facts suggesting that any other female was subjected to like situations in the defendant's employ.

True it is that *after* asserting such facts she uses a "broad brush" when she alleges a class action. (See paragraphs 20 to 25, inclusive, of plaintiff's complaint.) These, however, are conclusory allegations unsupported by allegations of fact. Such allegations have historically been sufficient to support class action determinations. *See Rhodes v. Weinberger,* 66 F.R.D. 601 (E.D. Pa.1975); *Jones v. United Gas Improvement Corp.,* 68 F.R.D. 1 (E.D.Pa.1975); *Paddison v. The Fidelity Bank,* 60 F.R.D. 695 (E.D.Pa.1973); *Williams v. Local No. 19 Sheet Metal Workers International Ass'n,* 59 F.R.D. 49 (E.D.Pa.1973); *Mack v. General Electric Co.,* 329 F.Supp. 72, 76 (E.D.Pa. 1971); *Bowe v. Colgate-Palmolive Co., et al.,* 416 F.2d 711 (7th Cir. 1969). They support an "across the board" approach admittedly and expressly here followed by the plaintiff in seeking class action determination (see page 2 of plaintiff's supporting

memorandum). The reasoning underlying such approach is expressed as follows:

In *Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711 (7th Cir. 1969), a Title VII sex discrimination class action, the court noted:

"A suit for violation of Title VII is necessarily a class action as the evil sought to be ended is discrimination on the basis of a class characteristic, i. e. race, sex, religion or national origin."

In *Mack v. General Electric Co.,* 329 F.Supp. 72, 76 (E.D.Pa.1971), the court reasoned that:

"Since a permeating policy of racial discrimination is alleged, there can be little doubt that there are questions of law and fact common to all class members."

In *Jones v. United Gas Improvement Corp.,* 68 F.R.D. 1 (E.D.Pa.1975), the court stated:

"This 'across the board' approach is clearly the law in this District, and was recently reaffirmed by Judge Newcomer in *Paddison v. Fidelity Bank,* 60 F.R.D. 695 (E.D.Pa.1973). While there may be some factual differences in the situations of individual class members, it would unduly restrict the remedial purposes of this civil rights litigation to fragment or dissolve a class action because of such nuances, when racial discrimination has been broadly alleged and all class members are potential victims of that discrimination." (at 21)

Relying upon these cases and the principle therein followed, even the plaintiff recognizes a substantial difference when applied to facts here alleged. On page 7 of plaintiff's supporting memorandum, she states:

"Plaintiff adequately represents the class regardless of the happenstance that her individual grievances may ultimately prove to differ in some respects from those of other class members."

Defendants argue that the difference is more than a "happenstance" and that the

---

**3.** Defendants' affidavits tell a different story of studied indifference to orders, including failure to meet deadlines, failure to confine news articles to predetermined lengths, failure to extend proper priorities in accordance with employer instructions, etc.

certification here sought exclusively under F.R.C.P. 23(b)(2) must fail.

■ The plaintiff, seeking class certification, has the burden of establishing that she fulfills all the prerequisites and requirements of F.R.C.P. 23(a) *and* 23(b)(2) which provide as follows:

"Rule 23.  Class Actions

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

\*    \*    \*    \*    \*    \*

(b) Class Actions Maintainable.  An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\*    \*    \*    \*    \*    \*

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

The plaintiff has the burden and the requirements are mandatory: *Katz v. Carte Blanche Corporation,* 496 F.2d 747 (3d Cir. 1974).  Failure to meet the burden precludes class action certification: *Peltier v. City of Fargo,* 396 F.Supp. 710 (D.N.Dak. 1975); *Mason v. Calgon Corporation,* 63 F.R.D. 98 (W.D.Pa.1974); *Boston Pneumatics v. Ingersoll Rand,* 65 F.R.D. 61 (E.D.Pa. 1974); *Blumberg v. Barrett,* (E.D.Pa. Civil Action No. 73–237, opinion dated December 27, 1974); *Daye v. Pennsylvania,* 344 F.Supp. 1337, 1342 (E.D.Pa.1972); *White v. Gates Rubber Co.,* 53 F.R.D. 412, 415 (D.Colo.1971); *Philadelphia Electric Co. v. Anaconda American Brass Co.,* 43 F.R.D. 452, 457 (E.D.Pa.1968).  Repetition of the rule is insufficient.  Specific facts must be

recited and alleged sufficient to meet the requirements of the rule: *Gillibeau v. Richmond,* 417 F.2d 426, 432 (9th Cir. 1969). Plaintiff must allege facts showing or tending to show:

1.  The class is so numerous that joinder would be impracticable;

2.  The claims of the representative party are typical of the claims of the class;

3.  There are common questions of law or fact;

4.  Plaintiff will fairly and adequately protect the interests of the class;

5.  The defendants currently and in the past have acted or refused to act on grounds generally applicable to the class thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole;

6.  There are no difficulties likely to be encountered in managing a class action; and, a class suit is superior to other methods of handling the suit.

■ Here, plaintiff does not allege *facts* showing or tending to show her ability to meet the requirements of the rule.  Rather, relying upon the cases heretofore cited she substitutes the "across the board approach".  In so doing the plaintiff has neither overlooked nor ignored the recent case of *Wetzel v. Liberty Mutual,* 508 F.2d 239 (3d Cir. 1975), but has failed to analyze it.  True, the court there affirmed a class action determination, but in so doing, in a well-written and scholarly opinion which concerned itself with due process and the need for notice to class members in a (b)(2) class action said as follows:

"The very nature of a (b)(2) class is that it is *homogeneous* without any conflicting interests between the members of the class.  Since the class is *cohesive,* its members would be bound either by the collateral estoppel or the stare decisis effect of a suit brought by an individual plaintiff.  Thus, as long as the representation is adequate and faithful, there is no unfairness in giving res judicata effect to a judgment against all members of the class even if they have not received no-

tice. Adequacy of representation of the class is a mandatory requirement for the maintenance of a class action under Rule 23(a). If the representation proves inadequate, members of the class would not be bound." *Supra,* at 256. (Emphasis supplied).

On the contrary, (b)(3) actions are heterogeneous and require notice to class members with the opportunity to "opt out". *Supra,* at 255.

The touchstone and indeed the vital core of a (b)(2) action is "cohesiveness". Indeed, there can be no other result in view of the court's ruling as to due process and the res judicata effect of such action. The repetitious use of the words "cohesive" and "homogeneous" attest to the fact that in (b)(2) actions, without notice to class members, the interests of the class members must be so like those of the individual representative that injustice will not result from their being bound by said judgment in the application of the principles of res judicata. Defendant suggests that the interests must be so identical that each class member can "step into the shoes" of the representative plaintiff. We do not go this far, but we are convinced that the factual allegations here are so uniquely personal to the plaintiff's individual circumstances that a class action cannot be certified.

■ A plaintiff *must* be a member of the class she seeks to represent. *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). As stated in *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, note at 1925, 48 L.Ed.2d 450 (1976):

" * * * Plaintiffs who represent a class 'must *allege* and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'"

Here, plaintiff alleges precise and specific circumstances peculiarly individual and personalized as to her and then seeks to represent a class on other broad and unlimited grounds. She may not, by alleging a class

action, acquire standing to represent a class on broad grounds and issues unrelated to her individual case. The broad impact of *Wetzel,* having a res judicata effect as to (b)(2) actions, can lead to no other just result.

■ The "across the board" approach may properly be applied to situations where an aggrieved plaintiff was affected by an identifiable policy or practice obviously applicable to others in like status such as pregnancy or illegitimacy or such as *Wetzel* where it was *admitted* that the policy or practice identified was applied to *all* employees and hence all members of the class. As was stated in *Blankenship v. Wometco Blue Circle, Inc.,* 59 F.R.D. 308, 309 (E.D. Tenn.1972) " * * * Nowhere in the complaint does there appear a basis to support the claim relating * * * " to the proposed class. Title VII does not automatically grant the right to class action: *Mason v. Calgon Corporation,* 63 F.R.D. 98, 103, 104 (W.D.Pa.1974). As was stated in *Gresham v. Ford Motor Co.,* 53 F.R.D. 105, 106, 107 (N.D.Ga.1970):

"This appears to be a case of *particular* action taken against an individual, resolution of the dispute involving which will require only examination of the *particular* facts involved."

Thus, since *Wetzel,* the "across the board" or "broad brush" approach of earlier cases, upon which plaintiff relies, cannot fairly and blindly be followed in every case and the class action question so easily decided. Rather, the factual allegations must be searched to determine whether the "cohesive" and "homogeneous" tests are met. In such analysis, we must again turn to the rule and its requirements.

■ At the very threshold, the plaintiff must be a member of the class she seeks to represent. She concedes that her "individual" grievances differ from those she seeks to represent (see plaintiff's supporting memorandum, page 7). Indeed, her "individual" grievances are so individualized that there may have been no one similarly aggrieved. Thus, the numerosity require-

ments of the rule have not been met. Uncontradicted affidavits submitted by the defendant establish that no female other than the plaintiff has *ever* been dismissed or fired by the defendant; only one, other than plaintiff, has ever transferred from part-time to full-time within the family section of defendants' organization and plaintiff is the only woman who has ever moved from the family section to the Metro news staff and only eleven women have held positions similar to plaintiff. Given the limited facts alleged, as already discussed at length, and the *limited* number of females who could *possibly* have been affected and become members of the class, we conclude that the requirements of 23(a)(1) have not been met. A mere allegation of numerosity is not sufficient. *Mason v. Calgon Corporation, supra.*

Similarly, in view of the issues created by the plaintiff's peculiarly personal and individual complaints, considered in the light of the broad class she seeks to represent, we doubt that there are common issues of law and facts. The factual considerations as to each member of the class are so disparate that we are forced to conclude that the requirements of 23(a)(2) have not been met.

Neither can the personalized and individualized grievances of the plaintiff be typical of the class. Plaintiff has not demonstrated that class members have suffered the personalized grievances of which she complains. Uncontradicted evidence submitted by the defendants establishes that no other woman has been fired, much less under the peculiar circumstances alleged by plaintiff. Thus plaintiff has failed to meet the requirements of 23(a)(3).

All of the above considered, it is difficult to reasonably conclude that plaintiff, whose complaints are so substantially confined, personalized and individualized could protect the interests of the class in broad, multiple and diversified areas allegedly applicable to the class. We conclude that the requirements of 23(a)(4) have not been met.

As to 23(b)(2), the record is barren of any factual averments that defendants have acted or refused to act on grounds generally applicable to the class. This is not a case such as *Wetzel* where the defendant has admitted that its conduct, if actionable, related to the class. Neither has plaintiff alleged such conduct by appropriate factual averments. The broad and conclusory allegations contained in the complaint have been denied. No supporting data has been submitted by plaintiff. The requirements of 23(b)(2) have not been met.

The plaintiff's motion for a class action will be denied.