Alberto **MARTINEZ**

v.

**BETHLEHEM STEEL CORPORATION.**

**Civ. A. No. 77–906.**

United States District Court,
E. D. Pennsylvania.

Feb. 13, 1978.

Andrew Erba, Philadelphia, Pa., for plaintiff.

Arthur R. Littleton, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Plaintiff has filed this action on behalf of himself and all others similarly situated against defendant, his former employer, under and pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981, alleging discriminatory treatment on the basis of his Hispanic national origin. Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e–5(f), 28 U.S.C. § 1343(3) and (4) and § 1332.

Plaintiff alleges that he was employed from 1968 until May 14, 1974, by defendant, and that from 1971 until that date he worked in Department 342, Motor Trucks (Unit 342) in defendant's Bethlehem, Pennsylvania, plant. In or around March of 1973, plaintiff was assigned to drive a Ross Carrier, but requested this assignment be changed on the grounds that it would be harmful to his health. He was referred to defendant's medical dispensary and on March 15, 1973, he received a medical restriction which precluded his operating vehicles such as Ross Carriers. Therefore, from that date until April 26, 1973, plaintiff worked in his unit operating vehicles other than Ross Carriers. On that date plaintiff went on sick leave because of an ulcer condition, returning to work on October 15, 1973. Upon his return he was examined by defendant's medical office and cleared for "regular work". When plaintiff returned to Unit 342, however, he was told he could not work there because of "medical restrictions" even though he was ready, willing and able to operate any vehicle other than a Ross Carrier. Despite sufficient seniority to be assigned vehicles other than Ross Carriers and despite the availability of work other than the operation of Ross Carriers in Unit 342, plaintiff was placed on layoff from Unit 342. Plaintiff continued to seek reinstatement to Unit 342. On March 4, 1974, plaintiff was assigned a position as a janitor, which paid considerably less than his former position.

Plaintiff sought to file a grievance with his Union, United Steel Workers of America Local # 2600 (the Union), but was subjected to a complete lack of cooperation.[1] In April of 1974 plaintiff requested another physical examination, at which time all pri-

1. Plaintiff originally brought an action against the Union for failure to adequately represent him, but subsequently dismissed that action.

or restrictions were removed. From then until May 9, 1974, plaintiff requested reassignment to Unit 342, but despite the knowledge of all concerned that plaintiff's medical restrictions had been removed and despite the existence of work in Unit 342, plaintiff was not reassigned to this Unit. On May 10, 1974, plaintiff resigned in protest.[2]

Currently before the Court is plaintiff's motion, pursuant to F.R.C.P. 23(a) and (b)(2), to certify this action as a class action on behalf of all Spanish surnamed persons "presently employed; who have been employed within one hundred and eighty days prior to plaintiff's EEOC complaint to the present, or who will be employed with Bethlehem Steel Corporation in the Bethlehem Steel Plant; who have applied for assignment to Motor Truck Department 342 within that period; have been assigned to that department; or will apply for assignment to said department and were denied assignment to or subject to disparate treatment in the department or any other conduct violative of the Equal Employment Act; 42 U.S.C. § 2000e–5 et seq., within the aforementioned period of time." Also before the Court are defendant's motions to dismiss the action under § 1981 and to strike plaintiff's demand for a jury trial.

### Plaintiff's Motion for Class Action Certification

Plaintiff bases his motion for certification of this action as a class action on the assertion that defendant regularly discriminates against Spanish surnamed individuals in their employment. Plaintiff alleges that to his knowledge only four of the more than two hundred employees in Unit 342 were of Hispanic origin, and that to plaintiff's knowledge that number is no larger at the present.

The plaintiff, seeking class certification, has the burden of establishing that he fulfills *all* the prerequisites and requirements of F.R.C.P. 23(a) and (b)(2) which provide as follows:

"Rule 23. Class Actions

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

\*　\*　\*　\*　\*　\*

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\*　\*　\*　\*　\*　\*

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

The plaintiff has this burden and the requirements are mandatory. *Katz v. Carte Blanche Corporation*, 496 F.2d 747 (3d Cir. 1974), *Martin v. Easton Publishing Company*, 73 F.R.D. 678 (E.D.Pa.1977). Failure to meet the burden precludes class action certification. Mere repetition of the rule is insufficient; specific facts must be recited and alleged sufficient to meet the requirements of the rule. *Gillibeau v. Richmond*, 417 F.2d 426 (9th Cir. 1969), *Martin v. Easton Publishing Company, supra*. Therefore, plaintiff must allege facts showing or tending to show that:

1. The class is so numerous that joinder would be impracticable (numerosity);
2. The claims of the representative party are typical of the class (typicality);
3. There are common questions of law or fact (commonality);
4. Plaintiff will fairly and adequately protect the interests of the class (adequacy).

---

2. In paragraph 13, plaintiff asserts that he was employed until May 14, 1974, but in paragraph

35 he says that he resigned on May 10, 1974. There is no explanation for this discrepancy.

Furthermore, the plaintiff must show that the defendant currently and in the past acted or refused to act on grounds generally applicable to the class thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole *and* that there are no difficulties likely to be encountered in managing a class action, and that a class suit is superior to other methods of handling the suit.

■■■ We find that the plaintiff fails to satisfy the typicality and commonality requirements of F.R.C.P. 23. As we noted in *Martin, supra*, a motion under 23(b)(2) is by nature cohesive, so that the interests of the class members must be so like those of the representative, in this case the plaintiff, that injustice would not result from the class members being bound by a judgment as to the plaintiff. Therefore, the circumstances cannot be "precise and specific circumstances peculiarly individual and personalized" as were the circumstances alleged in *Martin*.

In this case, the circumstances are specific circumstances peculiarly individual and personalized. In his deposition, plaintiff admits that he was not ill or injured when examined by the doctor, that he simply did not want to operate a Ross Carrier and that he would not operate one even if it was part of his job. (Deposition of Plaintiff at pages 19, 20 and 21.) Apparently, he fabricated a reason not to operate Ross Carriers and acquired a medical exemption; took sick leave; returned to work and was not given work in a particular unit because of medical restrictions that he had set out to create. He alleges that his subsequent denial of work was because of his Hispanic national origin; defendant claims it was the result of his medical restriction and his relative seniority.

Plaintiff attempts to bolster his argument for class certification with an "across the board" approach, which the courts have recognized. See *Wetzel v. Liberty Mutual*, 508 F.2d 239 (3d Cir. 1975). However, in order to utilize this approach, the plaintiff must be affected by an identifiable policy or practice obviously or admittedly applicable to others in like status. This was not a problem for the *Wetzel* plaintiff, where the defendant admitted it applied a certain policy or practice to all employees, and thus to all members of a class. However, in the case before us there is no indication whatsoever that plaintiff has suffered as a result of an identifiable policy. On the contrary, Marvin Peters has testified in his deposition that no other employee has ever complained about operating a Ross Carrier. (Deposition of Marvin Peters at p. 51.) Clearly, plaintiff's circumstances are highly particularized as to him, and this action is not certifiable as to any conceivable class.

There are other forceful arguments asserted by defendant as grounds for denial of class certification which we need not consider. We find that this action is not certifiable on the grounds that plaintiff's claims are not typical of the class he seeks to represent and that there are no issues of law or fact common to the class. Therefore, we will deny plaintiff's motion to certify as a class action.

### *Defendant's Motions to Dismiss § 1981 Claim and to Strike Demand for Jury Trial*

Defendant has moved to dismiss the claim brought pursuant to § 1981 and to strike plaintiff's demand for a jury trial. Defendant contends that § 1981 is available only for claims of discrimination on the basis of race, not for claims of discrimination on the basis of national origin.

In *Jones v. United Gas Improvement Corp.*, 68 F.R.D. 1 (E.D.Pa.1975), the Court stated that " * * * the provisions of 42 U.S.C. § 1981 *are limited in their application to discrimination, the effect of which is to deny to any person within the jurisdiction of the United States any of the rights enumerated in the section, to the extent that such rights are enjoyed by white citizens of this nation. Discrimination on other grounds, such as religion, sex, or national origin, to which white citizens may be subject, as well as white non-citizens, non-white citizens, or non-white non-citizens, is not proscribed by the statute.*" (Emphasis in the original) *Id.* at 15.

Other courts have held, however, that if national origin discrimination is indistinguishable from racial discrimination, then an action will lie for national origin discrimination under § 1981. For example, the Court in *Cubas v. Rapid American Corp., Inc.*, 420 F.Supp. 663, 665 (E.D.Pa.1976), noted that "Hispanic Amercians claiming that they have been discriminated against in violation of § 1981 are entitled to introduce evidence to prove that the alleged discrimination was racial in character." In *Budinsky v. Corning Glass Works*, 425 F.Supp. 786 (W.D.Pa.1977), the Court observed:

"The terms 'race' and 'racial discrimination' may be of such doubtful sociological validity as to be scientifically meaningless, but these terms nonetheless are subject to a commonly-accepted, albeit sometimes vague, understanding. Those courts which have extended the coverage of § 1981 have done so on a realistic basis, within the framework of this common meaning and understanding. On this admittedly unscientific basis, whites are plainly a 'race' susceptible to 'racial discrimination'; Hispanic persons and Indians, like blacks, have been traditional victims of group discrimination and, however inaccurately or stupidly, are frequently and even commonly subject to a 'racial' identification as 'nonwhites'. There is accordingly both a practical and a logical reason to extend § 1981's proscription against exclusively 'racial' employment discrimination to these groups of potential discriminatees."

Similarly, the Court in *Ortega v. Merit Insurance Co.*, 433 F.Supp. 135 (N.D.Ill.1977) noted:

"We recognize the logical problems in the 'pragmatic' approach, whereby an ethnic minority, such as Italians and Jews at the turn of the century or Hispanics today, may 'drift' within and later without Section 1981 protection, depending on the circumstances of the times, and the shifts in recognition of ethnic and racial equality by the majority. But we agree * * * that there is both 'a practical need and a logical reason' today to include people of Hispanic origin as a group entitled to the protection of § 1981 against claims of discrimination such as alleged herein. * * * * "

■ We do not agree that there is a "practical need and a logical reason" to extend § 1981 in this manner. First of all, there is not the "practical need", because Congress has provided protection for persons affected because of national origin in the form of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, commonly known as Title VII. It bears repeating that the plaintiff in this case is bringing this action under both § 1981 and Title VII. So not only do Hispanic persons in general have the right to seek redress under Title VII, but this particular plaintiff is so acting.

■ If the need for redress for national origin discrimination surpasses the purview of Title VII, there still would not be a "logical reason" for the courts to extend the scope of § 1981. Such an extension is for Congress to provide, because both § 1981 and Title VII are Congressional creations. If the courts extend the scope of Congressional legislation without mandates from Congress, they will render it impossible for Congress to limit the scope of its own creations. When Congress passed Title VII in 1964, it could have amended § 1981 to prohibit national origin discrimination as well as racial discrimination or it could have created new legislation accomplishing that purpose. It did not do so, and we will not do so. In so doing, we are following the maxim that statutes in derogation of the Common Law, such as the Civil Rights statutes, must be narrowly construed.

■ Therefore, we will dismiss the portion of the complaint that is brought pursuant to § 1981. In so doing, we are also constrained to grant the motion to strike plaintiff's demand for a jury trial. Title VII actions, being equitable in nature, do not give rise to jury actions, since the relief sought, back pay and reinstatement, is properly determined through the discretion of the court, not the jury. See *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122 (5th Cir. 1969).

**130**

*Conclusion*

For the reasons cited herein, we will deny plaintiff's motion to certify this action as a class action and we will grant defendant's motion to dismiss the claim under § 1981 and to strike plaintiff's demand for a jury trial.