DTW:rm

**Lillian T. CIARROCHI, on behalf of herself and all others similarly situated**

v.

**PROVIDENT NATIONAL BANK.**

Civ. A. No. 76–3487.

United States District Court, E. D. Pennsylvania.

June 29, 1979.

As Corrected July 18, 1979.

Wilbur Greenberg and Gary Green, of Sidkoff, Pincus, Greenberg & Green, P. C., Philadelphia, Pa., for plaintiffs.

Seynour Kurland and Ian Strogatz, of Wolf, Block, Schorr and Solis-Cohen, Philadelphia, Pa., for defendant.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

This action is a sex discrimination suit brought under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.,* the Equal Pay Act, 29 U.S.C. § 206(d) *et seq.,* and various unidentified Executive Orders challenging the employment practices of the Provident National Bank (hereinafter "Provident"). The plaintiff, Lillian T. Ciarrochi, was employed by Provident from November 17, 1969 to May 23, 1975, when she was discharged for alleged insubordination in refusing to perform a work assignment. Jurisdiction of this Court is alleged to be invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361; 28 U.S.C. § 1343; 28 U.S.C. §§ 2201, 2202; 42 U.S.C. § 2000e–5(f); 28 U.S.C. § 1337 and 29 U.S.C. § 216(b).

Presently, the plaintiff moves for certification of the following classes:

PRIMARY CLASS

All female employees of Provident National Bank in salary grade nine and above who, on or after January 10, 1975 were being, or will be, denied employment opportunities solely on account of their sex; and,

SUB CLASS

All females who, on or after January 10, 1975 applied or will apply for jobs at Provident National Bank in salary grade nine and above, but who were denied employment opportunities solely on account of their sex.

For the reasons set forth below, I deny the said motion.

### I.

The plaintiff was first employed by Provident, a large commercial bank with offices dispersed throughout Philadelphia and its surrounding counties, on November 17, 1969. The Bank offered her a position as an accounting officer at an annual salary of $8500, and although she felt that this salary was both incommensurate with the responsibilities she would assume and less than what similarly situated males at the Bank earned, she accepted the job.

During the course of working for her male supervisor, Tony Cacciatore, the plaintiff's misgivings about Provident's treatment of female employees steadily escalated. She alleges that Cacciatore repeatedly demeaned and harassed female subordinates. According to the plaintiff, Cacciatore assigned her the "dirty work" in the department that was never shared by the male accountants, including fetching coffee and performing clerical tasks. Although she inquired through him about better positions within the bank, she felt that she was never considered for any of them, and they were later filled with men. The plaintiff also maintains that Cacciatore gave her smaller raises than those given to the male accountants. When she complained, Cacciatore allegedly replied that the men were "married and have responsibilities and they need more money."

In 1973, the plaintiff became an active member of the National Organization of Women (NOW). This role led her to realize that Cacciatore's misogynism, albeit extreme, generally typified the Bank's discriminatory attitude toward women. Her affiliation with NOW was well known throughout the Bank, and she claims that disgruntled females constantly called her or stopped her on the elevator to inform her of their experiences with sex discrimination at Provident. Through these conversations the plaintiff was advised that at least 100 females were never considered for promotions, and that the secretarial and teller jobs were nothing but deadend positions. In addition, she alleges that female tellers complained that they were never considered for the "head tellers" job because that position was reserved for males.

On May 23, 1975, Provident terminated the plaintiff's employment. The immediate events precipitating this action began three days earlier. On May 20, 1975, Cacciatore held a meeting with the plaintiff and a

representative of the Bank's Trust Department. The plaintiff was informed that she would handle the books for a new subsidiary, and she alleges that it was estimated that this new account would demand from her ten additional hours of work during the first month, and eighty to ninety hours of work per month thereafter. The plaintiff claims that the next day, Cacciatore advised her that she would also be forced to assume clerical duties previously performed by his secretary. Although the plaintiff remonstrated against the imposition of these additional clerical duties, Cacciatore remained adamant. He allegedly suggested that the plaintiff could handle the extra chores by working Saturdays, Sundays and weeknights. The plaintiff asked to speak to a Bank officer with higher authority, but Cacciatore responded that the decision was unalterable. Consequently, the plaintiff later delivered to Cacciatore and his superiors a memo which stated, in part:

In regard to our conversation on Wednesday afternoon when you informed me that I would have to take over the books and records of PNFC, this letter is notice that I refuse to do it.

. . . I expressed the opinion that this added burden would be physically impossible without working excessive overtime for which I am not compensated. I also felt that the work I am presently doing could not possibly receive the quality of attention required.

When I asked about extra compensation, you told me there would be none. . . . When I persisted on the compensation issue, you suggested we meet in several weeks and that I try to convince you that I am worth more money. I do not believe that a person with my experience and credentials should be put on trial.

I would be willing to discuss this in detail with anyone you suggest in an effort to reach an equitable compromise.

After reading the memo, Cacciatore called the plaintiff into his office to discuss her refusal to accept the new assignment. When she reaffirmed her objection to the additional work, Cacciatore informed her that he was terminating her for insubordination, and this termination was subsequently approved by the Bank's Personnel Division.

The plaintiff believes that her termination was also motivated by remarks she made to Mr. Lowry, a high-ranking officer of Provident, at a dinner party. The plaintiff arranged this meeting between Lowry and representatives of NOW. Apparently a heated discussion about the ethics of feminist groups receiving contributions from corporations ensued, and she feels that some of her comments may have offended Lowry.

On March 10, 1976, the plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC found no probable cause to support the charges alleged by the plaintiff, and on September 18, 1976, it issued her a "Right to Sue Letter." Subsequently, this lawsuit was timely filed.

Provident insists that the termination occurred because of the plaintiff's refusal to perform a requested work assignment. It is uncontroverted that Cacciatore followed the Bank's standard procedure for terminating employees. The plaintiff contends that her termination was motivated by sex discrimination. Moreover, she claims that this same sex discrimination pervaded all the higher level positions at Provident, transcending departmental lines, and affected all phases of employment—including hiring, promotion, transfer, working conditions, job assignment, training, compensation and termination.

The plaintiff bases these broad allegations on the theory that Provident's top management has effected a practice of discrimination whereby females are routinely channeled into the lower echelon jobs at the Bank while males are placed in the higher ones. The primary agent in this unlawful scheme, according to the plaintiff, is not Cacciatore whom she labels a "mere pawn," but rather the Bank's centralized Personnel Division. Although this Division lacks decision-making initiative in personnel matters, it formulates general employment policies

for the entire Bank, such as salary levels, and exercises review authority over the particular personnel actions taken by supervisory officials within the Bank's various departments. Thus, the department officials actually determine which candidates to hire, but the Personnel Division initially screens all applicants. Similarly, all decisions to terminate, transfer or promote an employee are initiated by the department officials, but their decisions are then reviewed by the Bank's Personnel Division. The plaintiff maintains that Cacciatore's termination of her employment and the subsequent approval of this action by the Personnel Division represent merely one instance of widespread sex discrimination at the Bank. Accordingly, she seeks now to represent the two aforementioned classes of allegedly aggrieved females pursuant to Federal Rule of Civil Procedure 23(b)(2) or, in the alternative, pursuant to any other subsection of Rule 23(b) which the Court deems appropriate.

## II

Before an action may be allowed to proceed on behalf of a class under Rule 23(b), all four requirements of Rule 23(a) must be satisfied. Rule 23(a) provides in full:

Rule 23. Class Actions

(a) Prerequisites to a Class Action

One or more members of a class may sue or be sued as representative parties on behalf of all only if

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

Compliance with Rule 23(a) ensures that the lawsuit may be feasibly and suitably maintained as a class action. Each of the

four requirements is mandatory, and the party seeking certification of the class bears the burden of establishing that all are met. *Davis v. Romney,* 490 F.2d 1360, 1366 (3d Cir. 1974); *Martin v. Easton Publishing Co.,* 73 F.R.D. 678 (E.D.Pa.1977). In addition, courts have held that the party moving for class certification must also show fulfillment of two implicit prerequisites; existence of the purported class, and his or her membership in it. *See generally,* 3B J. Moore, Federal Practices, ¶ 23.04 at 23–111 to –141 (2d ed. 1975).

In order to satisfy these requirements plaintiff Ciarrochi has sought to invoke the "across-the-board" approach commonly applied in Title VII class actions. Although this approach has occasionally come under fire, ostensibly for being a subterfuge to avoid the specific dictates of Rule 23(a),[1] it is in fact a salutary and logical device for implementing the congressional intent of eradicating unlawful discrimination. By incorporating into her complaint allegations that the challenged discrimination is pervasive or company-wide, an individual plaintiff may obtain from the reviewing court a relaxed application of the commonality and typicality requirements of Rule 23(a) which allows her to represent a class consisting of all persons affected by the employer's discriminatory practices, though she herself has been adversely affected by only one such practice and in only one division of the company.

With respect to commonality, the underlying rationale for across-the-board relaxation is well understood: courts reason that whether the employer discriminated against its employees on the basis of sex (or race) is a question common to all class members, regardless of factual differences in their individual circumstances, and that this single common question satisfies the requirement of Rule 23(a)(2) that there be "questions of law or fact common to the class." *See, e. g., Senter v. General Motors Corp.,* 532 F.2d 511, 523–24 (6th Cir. 1976); *Wajda*

---

1. See, e. g., Shawe, *Processing The Explosion in Title VII Class Action Suits: Achieving Increased Compliance With Federal Rule of Civil Procedure 23(A),* 19 William & Mary L.Rev. 469 (1978).

*v. The Penn Mutual Life Ins. Co.,* 80 F.R.D. 303, 307 (E.D.Pa.1978); *Black Grievance Comm. v. Philadelphia Elec. Co.,* 79 F.R.D. 98, 107 (E.D.Pa.1978); and *Hannigan v. Aydin Corp.,* 76 F.R.D. 502, 507–08 (E.D.Pa. 1977). With respect to typicality, it is said generally that the common thread of discrimination supplies the requisite typicality. 4 Newberg on Class Actions § 7983 at 1297 (1977). Thus, the named plaintiff's claims need not be factually indistinguishable from all class members' claims and, conversely, all members of the class need not have experienced discrimination in the same way as the named plaintiff. *See, e. g., Senter,* 532 F.2d at 524; *Hannigan,* 76 F.R.D. at 407.

Relying on three decisions recently rendered by courts in this judicial district—*Martin v. Easton Publishing Co.,* 73 F.R.D. 678 (E.D.Pa.1977), *McFarland v. The Upjohn Co.,* 76 F.R.D. 29 (E.D.Pa.1977), and *Martinez v. Bethlehem Steel Corp.,* 78 F.R.D. 125, 17 FEP Cases 113 (E.D.Pa.1978), Provident argues that the across-the-board approach cannot be used in this action. First, the Bank contends that the approach is inapplicable where, as here, the named plaintiff's grievance involves particularized or decentralized decisionmaking, and proof on the merits that she suffered personal discrimination at the hands of one supervisor would demonstrate neither a policy of unlawful discrimination nor that any other asserted class member was subjected to discriminatory treatment. According to Provident, use of the across-the-board approach is now restricted to challenges involving what it terms "a plainly identifiable policy admittedly or obviously applicable to others in like status," such as in a company-wide ban on employing pregnant women,[2] for then the proposed class is more cohesive and homogeneous, and adjudication of its claims requires consideration of only one uniform act of discrimination.

Alternatively, the Bank contends that Ms. Ciarrochi's grievance is peculiarly personal and individualized. Plaintiff has alleged no facts indicating that the challenged discrimination was classwide, the Bank maintains, and her sweeping accusations of pervasive sex discrimination arise exclusively from her own acrimonious experience with supervisor Cacciatore. In order to obtain class confirmation, Provident argues, a plaintiff may not place sole reliance on the maxim that "sex discrimination is by definition class discrimination;" she must allege facts showing or tending to show that similarly aggrieved individuals exist.

Though I agree with Provident's conclusion that class certification must be denied in this action, I believe that the Bank's arguments mischaracterize the holdings in *Martin, McFarland* and *Martinez* and obscure a more fundamental problem with having Ms. Ciarrochi represent the proposed classes. In *Martin* and its progeny the plaintiffs sought class certification solely on the basis of the personal allegations set forth in their complaints. The opinions reveal that the plaintiffs in *Martin* and *McFarland* never filed supporting affidavits, depositions, answers to interrogatories, or any other evidence that tended to confirm the existence of the asserted classes.[3] Upon reviewing the plaintiffs' submissions, the courts found no averments of facts tending to show that the alleged discrimination was classwide. *Martinez,* 78 F.R.D. at 128; *Martin,* 73 F.R.D. at 681–83; *McFarland,* 76 F.R.D. at 31. Instead, they found that the plaintiffs had alleged precise and specific circumstances peculiarly personal to themselves and then conclusorily asserted

---

**2.** Examples cited by the defendant include: *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (seniority system); *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (segregated job classification); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (testing); and *Sprogis v.*

*United Airlines, Inc.,* 444 F.2d 1194 (7th Cir. 1971) (no-marriage rule for stewardesses).

**3.** The *Martinez* opinion indicates that some discovery occurred in that action. There, plaintiff and one Marvin Peters were deposed. However, these depositions apparently furnished no support for plaintiff Martinez' sweeping class allegations.

the existence of similarly aggrieved employees. *See, e. g., Martin,* 73 F.R.D. at 683. In this narrow context, the courts refused to approve use of the across-the-board approach to relax the Rule 23(a)(2) and (3) requirements of commonality and typicality. Judge Troutman declared succinctly in *Martin:*

> Here, plaintiff alleges precise and specific circumstances peculiarly individual and personalized as to her and then seeks to represent a class on other broad and unlimited grounds. She may not, by alleging a class action, acquire standing to represent a class on broad grounds and issues unrelated to her individual case. 73 F.R.D. at 683.

Given the total failure of the plaintiffs in *Martin, McFarland* and *Martinez* to support their requests for class certification with anything more than the conclusory allegations in their complaints, I believe it is inaccurate to say that the decisions restrict application of the across-the-board approach to the one species of unlawful discrimination which involves a "plainly identifiable policy obviously applicable to others in like status." Indeed, since *Martin,* courts in this judicial district have repeatedly invoked the across-the-board approach in circumstances where no such identifiable policy was challenged and where the plaintiffs had alleged, by contrast, a company-wide pattern or practice of discrimination which could be proved only by reference to circumstantial or statistical evidence.[4]   *Wajda,* 80 F.R.D. 303; *Black Grievance Comm.,* 79 F.R.D. 98; *Hannigan,* 76 F.R.D. 502.

In my view, the *Martin* line of cases merely holds that a plaintiff moving for class certification must allege some facts indicating that the challenged discrimination was classwide. Accordingly, if a plaintiff can recite specific incidents or evidence of discrimination apart from the defendant's actions toward her, she may still rely on the across-the-board approach to allow her to represent a company-wide class, regardless of whether she is attacking a "plainly identifiable policy obviously applicable to others in like status." Of course, in the event that a plaintiff is attacking such a plainly identifiable policy, allegations concerning other incidents of discrimination would be superfluous, for in this situation it is obvious that the defendant's actions affect a class, not merely one employee.

The crucial distinction between *Martin* and the action presently before me is the impact of discovery. In order to impart some factual specificity to the conclusory allegations of her complaint Ms. Ciarrochi has found it necessary to refine her class claims through the process of discovery; at the same time, however, the discovery has shown that Ms. Ciarrochi's claims are not typical of those of the asserted classes.

In her complaint Ms. Ciarrochi aimed for representation of a broad class consisting of all past, present and future female employees, applicants for employment, and discouraged applicants for employment at Provident. Though she enumerated a long list of discriminatory acts allegedly performed by defendant, these acts were described generally, and no factual detail was provided.[5]

---

4. The use of statistical or other evidence obviates the need for the court to inquire into the merits of each individual class member's claim. The spectre of such a protracted inquiry, which Provident raises, is simply illusory. In *Presseisen v. Swarthmore College,* 71 F.R.D. 34 (E.D.Pa.1976), Judge Bechtle dispelled the same misconception:

> Secondly, defendants' argument assumes that, in order for plaintiff to be successful on the class claim, the Court must be presented with particularized evidence of each alleged discriminatory act against a class member. This is an invalid assumption. . . . Class based discrimination by defendants

may be proved by statistics and/or numerous cases of individual discrimination, as well as other circumstantial evidence. The members of the class need not individually prove each instance of discrimination allegedly perpetrated upon them, insofar as the question of liability is concerned. 71 F.R.D. at 44.

5. For example, plaintiff alleged that Provident:

> 2. Established and/or maintained and/or operated under a training and/or promotional system, the design, intent, purpose and/or effect of which is, and was to continue and preserve, and/or which has and/or had the effect of continuing and preserving the de-

In her motion for Class Certification filed after nine months of class-oriented discovery,[6] plaintiff Ciarrochi voluntarily narrowed the definition of the proposed classes, limiting its application to professional and management positions—salary grades nine and above, and restricting its coverage in time to the period running from January 10, 1975 to the future. Concomitantly, she expounded a theory elaborating Provident's alleged pattern and practice of sex discrimination. In the sixty-nine page brief accompanying her Motion for Class Certification, Ms. Ciarrochi alleges, in essence, that with the active participation or knowing acquiescence of the Bank's Personnel Division and upper management, females were routinely excluded from the jobs in salary grade nine and above and shunted into lower level, clerical positions. More precisely, plaintiff claims that Provident discriminated across-the-board against class members in six basic areas: hiring, promotional opportunities, training opportunities, working conditions, termination and salary.[7]

Discovery has revealed that in three of these areas—hiring, promotions and training—plaintiff has not suffered the discrimination that she alleges was visited upon the proposed classes. It is undisputed that plaintiff was hired the first time she applied for a position at Provident. She may have been hired grudgingly, as she insinuates, but the fact remains that she was hired whereas the proposed class members (applicants) were not. Similarly, plaintiff has alleged that female employees were seldom elevated to head teller and other positions.[8] Yet, the record discloses that Ms. Ciarrochi herself regularly received promotions. By 1975 she was earning an annual salary of $12,500, approximately 50 percent more than her starting salary five years earlier, and had attained the position of a minor officer at the Bank. Plaintiff has not identified with any specificity a single instance when she was denied a promotion. Nor has she alleged with any specificity a single instance when she was denied a training opportunity which could have led to a promotion.

As regards two other areas of alleged discrimination—working conditions and termination—Ms. Ciarrochi has alleged facts indicating that she personally suffered mistreatment. Indeed, these claims summarize plaintiff's long-standing complaints against supervisor Cacciatore. But plaintiff has alleged no facts indicating that these grievances were shared by the other class members.

She has cited no specific instance of another female employee being terminated,

---

fendant's policy, practice custom and/or usages of limiting the employment and promotional opportunities of female employees including plaintiff and the members of her class because of their sex.

3. Established and/or maintained and/or operated under a policy of employee supervision, evaluation and promotion, the design, intent, purpose and/or effect of which is, and was, to continue and preserve and/or which has, and/or had the effect of continuing and preserving the defendant's practice, custom and/or usage of limiting the employment opportunities of female employees, including plaintiff and the members of her class, because of their sex, nationality, at all of its locations, and/or in the Commonwealth.

6. In this nine month period, plaintiff filed interrogatories, sifted through more than 900 pages of requested documents, and deposed three Provident executives. Plaintiff also obtained affidavits from four other employees at Provident, three of whom were female.

7. Evidence submitted by plaintiff to support these charges includes: her own deposition testimony specifically identifying other female employees at Provident who believed and complained to her that the Bank discriminated against women; affidavits from four other Provident employees, two of whom were also subordinates of supervisor Cacciatore, attesting to sex discrimination at the Bank; EEO–1 statistical summaries filed by the Bank for the years 1973 through 1975, which plaintiff contends shows that few woman were advanced to the higher-level positions; and a personnel requisition form dated 1973 which contains check-off boxes for designating the sex of desired replacements.

8. Provident directly disputes plaintiff's allegation concerning the head tellers. Defendant has submitted an affidavit which states that as late as 1975 when plaintiff was terminated, females held seventy-six percent of all head teller positions in salary grades nine and above.

and the assignment of menial tasks, such as fetching coffee, appears to have been confined to Mr. Cacciatore's department. While plaintiff conceivably could represent a class consisting of the women working under the allegedly misogynic direction of Mr. Cacciatore, the record reveals no other women of plaintiff's professional status under Mr. Cacciatore's supervision. Thus, the numerosity requirement of Rule 23(a) would not be met.

Finally, plaintiff's allegation that she was paid a lower salary than was paid to male employees for the same work, or that she was assigned more work yet received the same salary as similarly situated males, raises an Equal Pay Act claim. See 26 U.S.C. § 206(d) (1976). This claim is typical of those of the proposed classes, but for two reasons, I believe that a congruence on this claim alone is insufficient to allow plaintiff to represent the proposed classes. First, resolution of an Equal Pay Act claim necessarily requires a determination of whether the work was substantially equal. The actual work performance entailed in the jobs must be considered, and that performance is judged most appropriately on an individual, case-by-case basis.

Moreover, section 216(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b) (1976), is applicable to collective action in suits seeking recovery under the Equal Pay Act. In particular, section 216(b) provides that Equal Pay Act suits

> may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Because written consent is a statutory prerequisite to joining another employee as a party plaintiff under the Equal Pay Act, class certification of such claims in a sex discrimination suit brought pursuant to Rule 23 would appear inappropriate, particularly where the Equal Pay Act claim is the only claim shared by the named plaintiff and the proposed classes. The same written consent procedure applies to actions brought under the Age Discrimination Act and, in that context, numerous courts have held that Rule 23 is totally inapplicable. *McGinley v. Burroughs Corp.,* 407 F.Supp. 903, 911 (E.D.Pa.1975); *accord, e. g., Kinney Shoe Corp. v. Vorhes,* 564 F.2d 859 (9th Cir. 1977); *La Chapelle v. Owens-Illinois, Inc.,* 513 F.2d 286, 289 (5th Cir. 1975).

In concluding, I observe that denying plaintiff's Motion for Class Certification in these circumstances comports well with the recent pronouncements of the Supreme Court in *East Texas Motor Freight, Inc. v. Rodriguez,* 431 U.S. 395, 406 n.12, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) and the Third Circuit Court of Appeals in *Scott v. University of Delaware,* 601 F.2d 76 (3d Cir. 1979). In both of these cases, the Courts ruled that classes should have been decertified when the facts developed during trial disclosed that the named representatives could no longer satisfy the requisites of Rule 23(a). My understanding of these decisions is that the initial certifications were proper and that Rule 23 should be construed liberally, particularly when the determination of the propriety of the class action is being made at an early stage of the proceedings. As the factual record grows, however, the district court must heed emergent data which cast doubt on the propriety of its earlier ruling.

A similar, albeit abbreviated, course has been followed in this action. I permitted plaintiff to conduct discovery, though the class allegations in her complaint were mechanical and conclusory.[9] That discovery

---

**9.** Though I permitted discovery, I do not approve of the boilerplate allegations of classwide discrimination used by plaintiff in her complaint. In a remarkably similar circumstance, Judge John Fullam of this judicial district cautioned plaintiff's counsel:

> *It is an abuse of F.R.Civ.P. 23 to make unsupported charges of classwide discrimination, in the hope that broadscale discovery may turn up some evidence to support the charges.* It is not an abuse of the rule for a plaintiff who claims to have been discrimi-

has revealed that plaintiff's claims are atypical of those of the asserted classes. *East Texas Motor Freight* and *Scott* make clear that class certification cannot be granted when the factual record before the Court shows that the requirements of Rule 23(a) are not .met. Accordingly, I deny plaintiff's Motion for Class Certification.

nated against, who knows it and believes she can prove it, to seek further substantiation from her adversary and, if there are others similarly situated, to press claims on their behalf as well. (Emphasis added.) *Cutner v. Atlantic Richfield Co.*, C.A.No. 77–806 (E.D. Pa., Slip Op. filed June 16, 1977 at p. 3).