Terry MAYS et al.

v.

**SCRANTON CITY POLICE DEPARTMENT et al.**

Civ. No. 79–271.

United States District Court,
M. D. Pennsylvania.

Nov. 8, 1979.

O. Randolph Bragg, David E. Heisler, Northern Pa. Legal Services, Inc., Scranton, Pa., Dianne Fitze, Northern Pa. Legal Services, Inc., Susquehanna County Office, Montrose, Pa., for Mays.

Thomas J. Foley, Jr., Rosser, McDonald, Marcus & Foley, Scranton, Pa., for Frank Gallucci, d/b/a Two Tone Towing Service.

Bradley L. Mallory, Asst. Atty. Gen., Dept. of Transp., Harrisburg, Pa., for Thomas Larsen.

Peter P. Tayoun, Asst. City Sol., Dept. of Law, Scranton, Pa., for Scranton City Police, Paul Durkin.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

This is a civil rights action under 42 U.S.C. § 1983 and its jurisdictional implements, 28 U.S.C. § 1343(3) and (4), challenging the validity of the summary removal and assessment of charges for the towing and storage of plaintiff's allegedly "abandoned" motor vehicle. Plaintiff contends that the taking of his automobile under 75 Pa.Cons.Stat.Ann. § 3352 (Purdon 1977) and the *de facto* creation of a mechanic's lien in favor of the tower under 75 Pa.Cons.Stat. Ann. § 7306 (Purdon 1977) without notice or the opportunity for a hearing prior to seizure and imposition of the lien denied him process due under the Fourteenth Amendment. He seeks compensatory and punitive damages on his own behalf and declaratory and injunctive relief on his behalf and a class of purportedly similarly situated individuals. Named as defendants are the Scranton City Police Department, Paul Durkin, Chief of Police of the Scranton City Police Department, Thomas Larsen, Secretary of the Department of Transportation for the Commonwealth of Pennsylvania, and Frank Gallucci, doing business as Two-Tone Towing Service and G & D Motors.

Presently before the court is plaintiff's motion pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure for an order certifying a class under Rule 23(b)(2). Because I believe that plaintiff has failed to demonstrate that he is a member of the class he purports to represent and that his claims are indeed typical of the claims of the putative class, his motion will be denied.

*FACTS*

It is the " 'precise and specific circumstances peculiarly individual and personalized' " surrounding the removal of plaintiff's car that militate against class certification. *See Martinez v. Bethlehem Steel Corp.*, 78 F.R.D. 125, 128 (E.D.Pa.1978). Thus, the factual background of plaintiff's personal grievance must be set out in some detail.[1]

Plaintiff is, and at the time of the incidents complained of was, a resident of Scranton, Pennsylvania. Some time between noon and 7:00 P.M. on December 30, 1978, Patrolman Michael Ruskowitz of the Scranton City Police Department directed defendant Frank Gallucci to remove plaintiff's unattended 1975 Dodge Colt parked in the 800 block of Myrtle Street, Scranton, to

---

1. The statement of facts is derived from the allegations of the complaint and the stipulations of fact submitted by the parties at the pretrial conference conducted in Chambers on October 17, 1979.

G & D Motors, located at 910 North Washington Avenue, Scranton. On the day plaintiff's automobile was towed the car displayed an expired Pennsylvania inspection sticker and did not bear a Pennsylvania license plate. In addition, the auto was missing its left front fender.

Under the Pennsylvania Vehicle Code,[2] a vehicle "without a valid registration plate or certificate of inspection or title left unattended on or along a highway[3] . . ." is presumed to be "abandoned," 75 Pa.Cons. Stat.Ann. § 102 (Purdon 1977),[4] and therefore subject to removal "to a nearby garage or other place of safety . . ." at the direction of any police officer. See 75 Pa. Cons.Stat.Ann. § 3352(c) (Purdon 1977).[5] Where possible, notice and an opportunity for "explanation" are to precede the removal of an abandoned vehicle:

(1) Prior to removal of an abandoned vehicle bearing a registration plate by which the last registered owner of the vehicle can be determined, notice shall be sent by certified mail to the last registered owner of the vehicle informing the owner that unless the vehicle is moved to a suitable location within five days of the date notice is mailed, the vehicle will be removed under this section and held at a suitable facility where it may be reclaimed by the owner in accordance with the provisions of section 7306 (relating to payment of costs upon reclaiming vehicle). If the abandoned motor vehicle does not bear an identifiable registration plate, the notice may be secured to the vehicle.

(2) If, within the five-day period, the owner so requests, the owner shall be given an opportunity to explain to the police officer or department why the owner believes the vehicle should not be moved. If the police officer or department determines that the vehicle shall, nonetheless, be moved, the owner shall be given an additional 48 hours to move the vehicle or have it moved.

(3) The provision for notice set forth in this subsection is in addition to any other notice requirements provided in Chapter 73.

75 Pa.Cons.Stat.Ann. § 3352(d) (Purdon 1977).

Although apparently not required under the Vehicle Code because plaintiff's car did not bear an identifiable registration plate, see 75 Pa.Cons.Stat.Ann. § 3352(d)(1) (Purdon 1977), efforts were made to determine the identity of the automobile's last registered owner by running the Vehicle Identification Number through the "CLEAN" Systems both in Harrisburg, Pennsylvania and Washington, D.C. These attempts,

---

**2.** Act of June 17, 1976, Pa. Laws 162, No. 81, 75 Pa.Cons.Stat.Ann. § 101, et seq. (Purdon 1977).

**3.** A "highway" under the Vehicle Code is defined as follows:

The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel. The term includes a roadway open to the use of the public for vehicular travel on grounds of a college or university or public or private school or public or historical park.

75 Pa.Cons.Stat.Ann. § 102 (Purdon 1977).

**4.** Also identified as an "abandoned vehicle" in the Vehicle Code is one

(i) that is inoperable and is left unattended on public property for more than 48 hours;

(ii) that has remained illegally on public property for a period more than 48 hours;

. . . . .

or (iv) that has remained on personal property without the consent of the owner or person in control of the property for more than 48 hours.

75 Pa.Cons.Stat.Ann. § 102 (Purdon 1977).

**5.** Section 3352(c) of title 75 Pa.Cons.Stat.Ann. authorizes removal of a motor vehicle under any of the following circumstances:

(1) Report has been made that the vehicle has been stolen or taken without the consent of its owner.

(2) The person or persons in charge of the vehicle are physically unable to provide for the custody or removal of the vehicle.

(3) The person driving or in control of the vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before an issuing authority without unnecessary delay.

(4) The vehicle is in violation of section 3353 (relating to prohibitions in specified places) except for overtime parking.

(5) The vehicle has been abandoned as defined in this title [75].

however, proved unsuccessful because of an error in the Vehicle Identification Number. Since plaintiff's identity as the owner of the '75 Dodge Colt was not ascertained he was not given notice of possible removal by certified mail. Nor was notice that the vehicle may be towed as abandoned secured to the car. Such notice was not made because it had been determined that the area in which plaintiff's car was parked was unsafe and a designation that the car was considered abandoned might constitute an invitation for vandalism. Accordingly, the car was towed without plaintiff having received any prior notice and without having received an opportunity to explain why he believed that it should not be moved.

Sometime during the evening of December 30, 1978 plaintiff discovered his car was missing and contacted the Scranton City Police Department. The desk sergeant who talked to plaintiff advised plaintiff that his car had been considered abandoned and towed away. Plaintiff subsequently requested the tower, defendant Frank Gallucci, to release his car. Defendant Gallucci refused, advising plaintiff that he would not release plaintiff's vehicle until the charges and fees authorized by section 7306 of the Vehicle Code had been paid.[6] Sometime in April, 1979, defendant Gallucci surrendered the car to plaintiff without pay-ment of the charges and fees authorized by statute. At no time was plaintiff afforded an opportunity for a hearing to ascertain if plaintiff's car was indeed abandoned or that he was in fact responsible for the charges and fees authorized by statute.

Plaintiff seeks a declaration that 75 Pa.Cons.Stat.Ann. § 3352(d), insofar as it fails to provide for written notice and the opportunity for a hearing prior to the towing of an allegedly abandoned motor vehicle where the identity of the owner is ascertainable or an opportunity for a hearing after towing where notice cannot be made prior to such towing, violates the due process requirements of the Fourteenth Amendment. While the complaint fails to assail the validity of 75 Pa.Cons.Stat.Ann. § 7306, plaintiff's counsel at the pretrial conference conducted in Chambers on October 17, 1979, argued that section 7306 also violates the Fourteenth Amendment insofar as it requires the person reclaiming a towed vehicle to pay the costs for towing and storage without a prior opportunity for a hearing to determine that person's responsibility for such expenses.[7]

## MOTION FOR CLASS CERTIFICATION

Plaintiff not only contends that application of the challenged Vehicle Code provi-

---

6. Section 7306 of the Vehicle Code provides:
   In the event the owner or lien holder of an abandoned vehicle reclaims the vehicle, the reclaiming party shall pay the costs for towing and storage, plus a fee of $25 of which $10 shall be transmitted to the department [of transportation] by the salvor.

7. The express contentions in the complaint are limited to 75 Pa.Cons.Stat.Ann. § 3352. For example, the initial paragraph of the complaint states: "This suit challenges the constitutionality of 75 Pa.Cons.Stat.Ann. § 3352, 1976, June 17, P.L. 162, No. 81, § 1, effective July 1, 1977, and the constitutionality of the operative effect given said statute by the Police Department of the City of Scranton and their agents, Two-Tone Towing Service and G & D Motors." Similarly, plaintiff's request for relief refers only to 75 Pa.Cons.Stat.Ann. § 3352. Nowhere in the complaint does plaintiff challenge the validity of 75 Pa.Cons.Stat.Ann. § 7306. Where, as here, a complaint assails the validity of statutory provisions those provisions should be specifically identified. What the court said

in *Baird v. Dassau,* 1 F.R.D. 275, 276 77 (S.D.N.Y.1940), is apropos here:
   Although under the Federal Rules of Civil Procedure plaintiff's relief does not depend upon the theory of action or actions which she adopts in her complaint, in the interest of clarity and good pleading, she should state the grounds upon which her various causes of action depend. Not only is such a statement necessary in order to present defendant with a complaint to which he can readily prepare an answer but also a proper definition of the issues will greatly facilitate future proceedings in the case, such as examinations before trial. (citations omitted)

Of course, plaintiff's failure to specify his attack on 75 Pa.Cons.Stat.Ann. § 7306 is not fatal, 5 C. Wright & A. Miller, Federal Practice and Procedure § 1255 (1969), and his claim relative thereto may be considered as included in his request for "such other relief as may appear to this Court to be just and proper."

sions denied him due process, but also that application of this legislation violates the Fourteenth Amendment rights of all who are subject to having their motor vehicles towed as abandoned. He thus seeks equitable relief "on behalf of all persons who own motor vehicles which are subject to Defendant's practices and procedures for towing of allegedly abandoned motor vehicles pursuant to the Pennsylvania Motor Vehicle Code." Plaintiff's Motion for Class Certification, Doc. # 8.

■ A motion for class certification may be granted only where the moving party demonstrates the existence of facts sufficient to satisfy each of the seven basic requirements for bringing a class action. *See Inmates of Lycoming County Prison v. Strode*, 79 F.R.D. 228, 231 (M.D.Pa.1978); *Martinez v. Bethlehem Steel Corp.*, 78 F.R.D. 125, 127 (E.D.Pa.1978). Four of the requirements are listed in subsection (a) of Rule 23 of the Federal Rules of Civil Procedure. They are:

> (1) the class is so numerous that joinder of all members is impracticable, [numerosity or impracticability] (2) there are questions of law or fact common to the class, [commonality] (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, [typicality] and (4) the representative parties will fairly and adequately protect the interests of the class. [adequacy of representation].

Another condition is that the litigation fall into one of three categories of class actions identified in subsection (b) of Rule 23. Plaintiff seeks certification of a class under clause (2) of subsection (b), which recognizes maintenance of a class action where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." The two remaining prerequisites, while not specifically spelled out in Rule 23, are fairly obvious: (1) there must be a definable class, and (2) the named representative must be a member of that class.

*See Inmates of Lycoming County Prison v. Strode*, 79 F.R.D. at 231. Application of these requirements to the facts of this case reveals that plaintiff is not a member of the class he proposes to represent and that his claims are not typical of the claims of the putative class.

## MEMBERSHIP IN THE CLASS

■ The requirement that the named representative be a member of the class he purports to represent is rooted in real party in interest, *see* Rule 17(a) of the Federal Rules of Civil Procedure, and standing concepts. *See* 7 C. Wright & A. Miller, Federal Practice and Procedure § 1761 (1972). In short, the named representative must suffer the same injury or threat of injury as suffered by the putative class. *See Bailey v. Patterson*, 396 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962) (per curiam); *DuPree v. United States*, 559 F.2d 1151, 1153 (9th Cir. 1977); *Davis v. Shultz*, 453 F.2d 497 (3d Cir. 1971); *Wilson v. Kelley*, 294 F.Supp. 1005, 1010 (N.D.Ga.), *aff'd*, 393 U.S. 266, 89 S.Ct. 477, 21 L.Ed.2d 425 (1968) (per curiam).

Scrutiny of the facts of the case and the named representative's grievance to ascertain his membership in the putative class is especially important where, as here, certification is sought under subsection (b)(2) of Rule 23 because the "vital core of a (b)(2) action is 'cohesiveness.'" *Martin v. Easton Publishing Co.*, 73 F.R.D. 678, 683 (E.D.Pa. 1977).

> The very nature of a (b)(2) class is that it is *homogenous* without any conflicting interests between the members of the class. Since the class is *cohesive*, its members would be bound either by the collateral estoppel or the stare decisis effect of a suit brought by an individual plaintiff.

*Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 256 (3d Cir. 1975) (emphasis added). Thus, in view of the fact that a judgment in a (b)(2) action will have a res judicata effect on members of the class and members are not given the opportunity to opt out of the class, it is essential that the named representative is in fact a member of the putative class.

■ The class plaintiff seeks to represent is comprised of all persons who are subject to having their motor vehicles towed as abandoned. Included among this class are those whose vehicles are subject to towing because they are inoperable and left unattended on public property for more than 48 hours; have remained illegally on public property for a period of more than 48 hours; have remained on private property without the consent of the landowner or person in control of the property for more than 48 hours; or, as in plaintiff's case, do not bear a valid registration plate or certificate of inspection and are left unattended on or along a highway. Section 3352(d) of the Vehicle Code requires notice and an opportunity for explanation prior to removal of any of these "types" of abandoned vehicles so long as prior notice is practicable. Thus, plaintiff's personal grievance is markedly different from the situation where notice by certified mail or notice by tagging the vehicle is provided and an opportunity for an explanation is afforded. While one provided with such notice may contest the sufficiency of the notice or the adequacy of the procedures for protesting the removal, plaintiff cannot be heard to complain of these procedures because under the peculiar circumstances of his case notice by certified mail was impossible and the responsible law enforcement officer had determined that notice by tagging was unwise. Furthermore, plaintiff individually does not have standing to assert that a post-seizure hearing is required in all cases because he was not exposed to the pre-seizure procedure that may obviate the necessity for the post-seizure proceeding. In short, plaintiff's complaint is limited to the narrow circumstances of his case: removal without notice or an opportunity for a hearing of an automobile that does not bear a registration plate or valid inspection sticker from an area in which police have reason to fear that the auto may be stripped if tagged as abandoned and whose owner cannot be identified by reasonable means.

■ *Burchette v. Dumpson*, 387 F.Supp. 812 (E.D.N.Y.1974), involved a situation somewhat analogous to that presented here. The plaintiff in that case complained that notice of a transfer from nursing home facilities was inadequate. The court denied class certification because of the uniqueness of the named representative's claim. In language appropriate to the problem presented here, the court stated:

> Members of the purported class may have experienced different treatment from that which the plaintiffs experienced relative to the notice and the opportunity for a hearing. Because of the possible variations in factual situations, it may well be that [the statute] is unconstitutional as applied to certain members of the purported class and yet may be constitutional as applied to others. Where such a line could be drawn is not readily apparent, and it would be much more appropriate to handle difficult constitutional questions arising from the application of the statute to varying fact-patterns on a case-by-case basis rather than in a class action.

*Id.* at 820. *Accord, Fuzie v. Manor Care, Inc.*, 461 F.Supp. 689, 700 (N.D.Ohio 1977). In such a situation as is presented here, where the likelihood of variations in treatment of motor vehicle owners who are subject to having their vehicles removed as abandoned may raise the possibility that the challenged legislation may be unconstitutional as applied to one member of the broadly defined class but constitutional as applied to others, the markedly differing fact patterns and the potential for varying legal conclusions require denial of class certification. *See Dale v. Hahn*, 440 F.2d 633, 640 (2d Cir. 1971).

THE TYPICALITY OF CLAIMS AND DEFENSES

■ Although there is some uncertainty as to the meaning to be ascribed to the requirement that the named representative's claims be typical of the claims of the class,[8] this prerequisite has been employed

---

8. The confusion surrounding the significance of the typicality requirement was explained in

*Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 269 70 (10th Cir. 1975):

"to screen out class actions when the factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are raised." 7 C. Wright & A. Miller, Federal Practice and Procedure § 1764 (1972). Such utilization of the typicality condition "requires a comparison of the claims or defenses of the representative with the claims or defenses of the class." *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 270 (10th Cir. 1975). Where it is found that a substantially different quantum of proof is required for the named representative than for the other members of the proposed class or that "a major focus of the litigation will be on an arguable defense unique to the named plaintiff" class certification should be denied. *Amswiss International Corp. v. Heublein, Inc.*, 69 F.R.D. 663, 667 (N.D.Ga.1975).

■ As the analysis for the requirement that the named representative be a member of the putative class pointed out, the peculiar circumstances surrounding the taking of plaintiff's car closely circumscribe the reach of his claim. Since plaintiff's identity was not ascertained and notice by tagging was believed to be unwise plaintiff's claim must be limited to the necessity for a post-seizure hearing. Yet the class he seeks to represent is also comprised of those who do receive notice prior to seizure. *See* 75 Pa. Cons.Stat.Ann. § 3352 (Purdon 1977). The opportunity for explanation provided under the Vehicle Code to those who can be given notice prior to seizure may or may not be constitutionally sufficient, but this issue cannot be litigated here since that procedure was never made available to plaintiff. This court has neither the inclination nor the power to adjudicate hypothetical claims of a supposed class the members of which are not in fact similarly situated with the named plaintiff. *See Taylor v. Safeway Stores, Inc.*, 524 F.2d at 270–271. Accordingly class certification must be denied because plaintiff has not satisfied the typicality requirement. *See Paton v. LaPrade*, 524 F.2d 862, 875 (3d Cir. 1975).

Plaintiff's argument that other courts have certified classes in actions challenging the validity of motor vehicle towing statutes is not compelling. In each case cited by plaintiff the named representatives were clearly members of the class they sought to represent. For example, in *Gillam v. Landrieu*, 455 F.Supp. 1030 (E.D.La.1978), the court certified three subclasses according to the particular section of the statute under which the individual named representatives' cars had been towed or immobilized. And in *Stypmann v. City of San Francisco*, 557 F.2d 1338 (9th Cir. 1977), and *Tedeschi v. Blackwood*, 410 F.Supp. 34 (D.Conn.1976), the challenged enactments did not contain any provision for pre-seizure notice and an opportunity for explanation, as does the Pennsylvania statute. Furthermore, actions assailing the validity of car tow legislation have been maintained as individual actions. *See e. g., Holladay v. Roberts*, 425 F.Supp. 61 (N.D.Miss.1977); *Graff v. Nicholl*, 370 F.Supp. 974 (N.D.Ill.1974), and class certification has been denied where, as here, the challenged car tow provisions did not apply to the facts of the case. *See, e. g., Bunkley v. Watkins*, 567 F.2d 304 (5th

Rule 23(a)(3) has been the subject of various judicial interpretations since it first appeared in the 1966 amendments to the Federal Rules of Civil Procedure, which can be partially explained by the failure of the advisory committee to articulate the meaning of Rule 23(a) prerequisites. The courts have not only failed to give Rule 23(a)(3) a commonly accepted meaning, but have been accused of giving it no independent meaning at all or merely making it duplicative of other Rule 23 prerequisites. The guiding rationale for many of the judicial interpretations of the typicality requirement has been the historical nexus between subsections (a)(3) and (a)(4); both of these subsections were derived from a common phrase in the original Rule 23 requiring "one or more [representatives], as will fairly insure the adequate representation of all . . . ." Because of its source in the original rule, subsection (a)(3) should logically deal with the adequacy of representation, but due to the broad language of subsection (a)(4) that a representative must "fairly and adequately" represent the class, it is difficult to attach a meaning to (a)(3) that is not included or does not overlap somewhat with subsection (a)(4). (footnotes omitted).

Cir. 1978); *Seals v. Nicholl*, 378 F.Supp. 172 (N.D.Ill.1973). Thus, the cases cited by plaintiff must be viewed as inapposite and do not warrant class certification.

CONCLUSION

 Plaintiff has failed to demonstrate that the prerequisites for certification of his broadly defined class have been satisfied. In addition, he has failed to allege and prove that a narrower class satisfying the criteria for certification does in .fact exist. Accordingly, his motion for class certification will be denied.[9]

---

**9.** Defendants had resisted plaintiff's motion on the ground that the return of plaintiff's car prior to the filing of the motion for class certification mooted plaintiff's claim for equitable relief and, therefore, destroyed his ability to represent the putative class. Defendants' argument is not persuasive. The mere voluntary cessation of the objectionable conduct does not necessarily foreclose prospective injunctive relief. *See Boyd v. Adams*, 513 F.2d 83, 89 (7th Cir. 1975).