**Oscar L. GRUBER, Raymond Shatz and Larry Greenstein, suing on Behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**PRICE WATERHOUSE, Defendant.**

**Civ. A. No. 86–3976.**

United States District Court,
E.D. Pennsylvania.

June 29, 1987.

Leonard Barrack, Gerald J. Rodos, Anthony J. Bolognese, Philadelphia, Pa., Richard B. Dannenberg, New York City, for plaintiffs.

John G. Harkins, Jr., Patricia L. Freeland, Robert L. Hickok, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

DITTER, District Judge.

Plaintiffs move for class action certification, pursuant to rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, of "all persons and entities who purchased the common stock of AIA Industries, Inc. registered under the registration statement effective July 21, 1983 during the period July 21, 1983 to March 17, 1984," excluding defendant Price Waterhouse, its partners and employees and all persons precluded from being plaintiffs in a related case, *In re: AIA Industries, Inc. Securities Litigation,* Master File No. 84-2276 (E.D.Pa.).

Prior to its bankruptcy in 1984, AIA was in the air transportation business. On July 21, 1983, AIA made its first public offering during which the three named plaintiffs purchased its stock. The public offering was accompanied by a registration statement and a prospectus that included financial statements audited by Price Waterhouse. The public offering materials also included an unqualified report from Price Waterhouse.

Plaintiffs allege the unqualified report and financial statements were false and misleading. They charge defendant with violations of section 11 of the Securities Act of 1933, section 10(b) of the Securities and Exchange Act of 1934, Rule 10b-5, and with state, common law fraud and deceit.

In order to have the proposed class certified, plaintiffs must prove compliance with the requirements of rule 23(a) and one of the three categories of rule 23(b), in this case, subsection (b)(3). Rule 23(a) provides:

(a) *Prerequisites to a Class Action.*

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition, plaintiffs must show: (1) questions of law or fact common to class members predominate over individual questions; and (2) the class action vehicle is superior to any other method of adjudication. Fed. R.Civ.P. 23(b)(3).

Defendant opposes class certification on several grounds. First, it alleges that their claims being atypical, the plaintiffs will not adequately represent the class. Second, defendant asserts individual questions of reliance and a statute of limitations defense predominate over questions common to the class. Defendant also opposes certification of the state law claims for the additional reason that the claims of the class members will be governed by the law of their domicile state thereby diminishing the effectiveness of a class action.

■ Securities actions are particularly suitable for class action treatment and any doubts should be resolved in favor of allowing a class action. *Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.1985). At the certification stage, the requirements of rule 23, not the merits of the case, are at issue.

*Rule 23(a) Requirements*

1. Numerosity

■ The proposed class numbers in the thousands, a fact which defendant does not contest. As so defined, the class is so

numerous that joinder of all members is impracticable.

### 2. Commonality

■ Rule 23(a)(2) requires the existence of questions of law or fact common to the class. *See, e.g., Peil v. Speiser*, 97 F.R.D. 657, 659 (E.D.Pa.1983), *aff'd on other grounds*, 806 F.2d 1154 (3d Cir.1986). Questions common to the proposed class here include whether the financial statements and unqualified report omitted or misrepresented the true nature of AIA's financial condition and defendant's due diligence, whether defendant is liable for the omissions or misrepresentations, whether the price of AIA's stock was artifically inflated as a result of defendant's nondisclosure, and whether class members sustained damages. Clearly, the requirement of commonality is satisfied.

### 3. Typicality

To avoid inter-class conflicts, rule 23(a)(3) requires that the claims of the class representatives be typical of the class. Defendant argues that the claims of the plaintiffs are atypical because they did not rely on the financial statements contained in the offering materials. Defendant also makes a lengthy argument that plaintiffs' claims are atypical because they are barred by the statute of limitations.

■ For purposes of rule 23(a)(3), typical does not mean identical. Rather the inquiry is whether "the named plaintiff's individual circumstances are markedly different or … the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Weiss v. York Hospital*, 745 F.2d 786, 809 n. 36 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985).

■ Applying this analysis, it is clear that plaintiffs' claims are typical. First, the claims of the class and the representatives arise from the same conduct by defendant: omissions or misstatements in connection with the public offering. Plaintiffs do not allege any oral representations or actions by defendant directed towards certain class members that would diminish the typicality of the liability issue.

■ Second, whether the proposed class representatives relied on the offering materials involves a review of the merits which is inappropriate on a class certification motion. In addition, whether the representatives relied on the financial statements directly or relied on others who read these statements is a question typical of the entire class. *See, e.g., In re Data Access*, 103 F.R.D. 130, 139 (D.N.J.1984).

Third, proof of reliance may be unnecessary if the fraud-on-the-market theory of liability is available. *See, e.g., Peil v. Speiser*, 806 F.2d 1154 (3d Cir.1986). In addition, plaintiffs have alleged material omissions which give rise to a presumption of reliance. *See Sharp v. Coopers & Lybrand*, 649 F.2d 175 (3d Cir.1981).[1] Defendant counters that these theories are not available in this case. *See, e.g., Peil*, 806 F.2d at 1161 n. 10 (leaving open the question of whether the fraud-on-the-market theory is available to an initial public offering). This argument, however, goes to the merits of the case and is inappropriate in a class certification motion. More importantly, this question is common to the entire class and poses no difficulty to a class action.

Similarly, the statute of limitations defense does not defeat typicality. Plaintiffs commenced this action on July 3, 1986. In its memorandum, defendant chronologically traces the disclosure of information to the public, as well as information revealed during the course of discovery in the related action. It argues that plaintiffs knew or should have known of the alleged omissions or misrepresentations more than one or two years before they brought this suit. Thus, defendant argues plaintiffs' claims are time-barred.

---

**1.** Moreover, for purposes of their claim under section 11 of the Securities Act of 1933, plaintiffs need not prove reliance. *See* 15 U.S.C. 77k(a). *See, e.g., In re Data Access*, 103 F.R.D. at 145–46.

As with its reliance argument, the statute of limitations defense goes to the merits of plaintiffs' complaint and therefore is beyond the scope of a motion for class certification. *See, e.g., Rishcoff v. Commodity Fluctuations Systems, Inc.,* 111 F.R.D. 381, 382–83 (E.D.Pa.1986). Defendant's own memorandum shows the impropriety of my reviewing the limitations argument at this time. Defendant states it will file motions to dismiss and for summary judgment on the basis of the statute of limitations once there has been additional discovery. Obviously, it would be unwise to consider the limitations defense on the basis of an incomplete record. Moreover, defendant's argument is based on information disclosed to the public and obtained during discovery in the related case where I certified basically the same class as this case; therefore, the statute of limitations defense is common to the class.

Thus, the issues of the representatives' reliance on the alleged misrepresentations and omissions and the statute of limitations defense do not make the representatives' claims atypical.

### 4. Adequacy of Representation

Plaintiffs are adequate representatives if: (1) plaintiffs' counsel are qualified, experienced, and capable of conducting the proposed class litigation, and (2) plaintiffs' interests are not antagonistic to those of the class. *Weiss v. York Hospital,* 745 F.2d at 811 (citing *Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 247 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975)).

Defendant does not attack the quality, experience, or capabilities of counsel. Rather, it asserts that because plaintiffs' claims are atypical their interests are antagonistic to the class. I have already concluded that their claims are typical; therefore, this argument is rejected.

Defendant also alleges Oscar Gruber is an inadequate representative because of his age and health. The relevant inquiry, however, is whether class counsel has the skill and competence to maintain the action, particularly in complex securi-ties cases. In any event, Mr. Gruber is competent to represent the class. He has demonstrated an awareness of the basis of defendant's liability and the nature of the class action.

### Rule 23(b)(3) Requirements

#### 1. Predominance of Common Questions

The common questions of defendant's culpability as well as the defense of the statute of limitations predominate over individual questions of reliance and damages. *See e.g., Peil v. Speiser,* 97 F.R.D. at 661. In the absence of class certification, each class member would have to show defendant made a misrepresentation or omission in connection with the financial statements and unqualified report. Clearly, the misrepresentation/omission issue predominates over any individual questions.

#### 2. Superiority of Class Action

A class action is a superior way to proceed with this action since joinder of all class members would be impracticable and individual trials would result in unwarranted duplication. Moreover, class action is appropriate where, as here, a large number of investors may have been harmed; however, individually they might not bother to bring suit because their individual damages are not great.

### Common Law Claims

Plaintiffs also seek class certification of their common law claims for fraud and deceit. Defendant asserts class certification is improper for two reasons. First, the representatives are not typical and common questions do not predominate since, under state law, direct reliance is a necessary element that will have to be shown as to each class member. Second, the case would be unmanageable since class members reside in at least 38 different states, and the law of each state would apply thereby requiring separate trials. Except for these contentions, my prior analysis of rule 23 is equally applicable to certification

of the state law claims. I will, therefore, only address these two arguments.

### 1. Reliance

■ It is clear that a plaintiff in a common law securities fraud case must prove direct reliance. A fraud-on-the-market theory is not available. *See Peil v. Speiser,* 806 F.2d at 1163. As noted by the Third Circuit, courts are split as to the propriety of certifying a class on common law claims with some courts typically denying certification on the ground that individual issues of reliance predominate over common questions. *Id.* at 1159 n. 8. Other courts, however, find that despite individual questions of reliance, class actions on state claims are manageable and common questions predominate. *See generally, In re ORFA Securities Litigation,* 654 F.Supp. 1449 (D.N.J.1987).

The Third Circuit, while not ruling on this issue, has stated, "[w]e are less certain that the court was correct in decertifying the class with respect to the common law claims [on the basis that individual issues of reliance predominate]." *Peil,* 806 F.2d at 1459 n. 8. In addition, Third Circuit decisions regarding certification of rule 10b–5 claims are instructive. In *Eisenberg,* the court stated, "[t]he presence of individual questions as to the reliance of each investor does not mean that the common questions of law or fact do not predominate over questions affecting individual members as required by Rule 23(b)(3) or that the representative's claims are not typical." *Eisenberg v. Gagnon,* 766 F.2d at 786. The court noted with approval a decision by then Chief Judge Lord who concluded that questions of individual reliance can be handled efficaciously by holding separate hearings. *See Sharp v. Coopers & Lybrand,* 70 F.R.D. 544 (E.D.Pa.1976); *see also In re ORFA, supra* (collecting cases that approve of the use of hearings, questionnaires, or other procedures to manage the reliance element).

■ The considerations that led the Third Circuit to conclude that the existence of individual questions of reliance does not defeat class certification in a rule 10b–5 case are equally applicable to state law claims. Here, more importantly, the question of defendant's liability is common to the entire class and predominates over individual questions of reliance.

■ The fraud and deceit claims are based solely on the alleged misrepresentations or omissions contained in the public offering materials. Thus, class certification is particularly appropriate since there are no individual questions regarding fraud or misrepresentation. Proof that a material misrepresentation was made and that defendant intended the representation to be made will be common to all members of the class. Moreover, these elements as well as the question of damages are common to both the federal and state law claims. In addition, it is possible that plaintiffs, on their section 10(b) and rule 10b–5 claims, will have to show actual reliance without the benefit of a presumption or the fraud-on-the-market theory of liability.

Finally, there are no allegations that defendant made any oral or personal representations; the issue will be limited to whether plaintiffs' relied on the audited financial statements and the unqualified report contained in the public offering materials. It does not appear that this inquiry will require a heightened degree of individualized attention nor has defendant alleged the presence of unusual or particularized questions regarding reliance. Thus, I find that common questions of law and fact predominate over questions of actual individual reliance.

### 2. Conflict of Laws

Defendant also claims class certification on the common law claims will require application of the state law of each class member thereby rendering a class action unmanageable. Recently, several courts have concluded that the law of the forum governs the common law claims of the entire class in securities cases. *See In re ORFA, supra, In re Pizza Time Securities Litigation,* 112 F.R.D. 15 (N.D.Cal.1986); *see also Dekro v. Stern Bros. & Co.,* 540 F.Supp. 406 (W.D.Miss.1982) (declining to deny certification simply because state

laws may differ). The reasoning of these cases is persuasive. Under this forum's choice-of-law analysis, I conclude that Pennsylvania law is likely to apply to the state law claims; therefore, a class action will not be unmanageable. *In re Pizza Time*, 112 F.R.D. at 18 (court should not conclusively determine choice-of-law question on a motion for class certification).

■ In *Phillips Petroleum Co. v. Shutts*, the Supreme Court held that before a state can apply its law to a class under a choice-of-law analysis, it must have "sufficient contact or aggregation of contacts" to the *claims* asserted by members of a class. 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). Otherwise, application of the forum law does not comport with due process. Here, AIA's principal place of business was in Pennsylvania, defendant has offices in Pennsylvania, a majority of the auditing work was performed in Pennsylvania, and the financial statements were prepared in and disseminated from Pennsylvania. These contacts establish a sufficient nexus between the forum state and the common law claims. I now turn to the choice-of-law question.

■ With respect to tort claims, Pennsylvania employs a choice-of-law analysis which combines the "most significant relationship" test espoused in the Restatement (Second) of Conflicts and the "interest analysis" approach attributed to Professor Currie. *Melville v. American Home Assurance Co.*, 584 F.2d 1306 (3d Cir.1978). Here, Pennsylvania has the most significant relationship to the dispute. I have already noted Pennsylvania's contacts. The only contacts that other states have with the dispute are that some class members are non-Pennsylvanians and relied on the alleged omissions or misrepresentations in the state of their particular residences. On balance, I conclude that Pennsylvania has the most significant relationship particularly since the financial statements alleged to contain the misstatements emanated from Pennsylvania.

Defendant has failed to articulate how the applicable law of other states' differs from Pennsylvania or how their interests or policies would be thwarted by application of Pennsylvania law. Because Pennsylvania has the most significant relationship to the dispute and defendant has failed to show how the law of another state would be frustrated, Pennsylvania law will likely apply to the fraud and deceit claims. *See Denenberg v. American Family Corp.*, 566 F.Supp. 1242 (E.D.Pa.1983).

I also concur in the view that every state's interest in protecting its residents from harm caused by fraudulent conduct will be furthered by applying the forum law to make possible the maintenance of a class action on the common law claims. *See In re ORFA*, 654 F.Supp. at 1463–64; *In re Pizza Time*, 112 F.R.D. at 19–20. The small recovery available individually to each class member effectively precludes maintenance of separate state actions. Thus, any state would prefer to see a class action proceed rather than for there to be no action at all.

The other requirements of rule 23 are satisfied for the reasons previously stated. Because common questions predominate and a class action is manageable, I will certify a class on the state law claims.

*Class Period*

Plaintiffs seek the same class period that was certified in the related action. Here, they allege impropriety by defendant solely in connection with the financial statements and unqualified report while in the related action the wrongful conduct extended through the class period. Defendant asserts that a class period through March 17, 1984, is too long in this case since other events, covered in the related action, occurred during the intervening period which diminish the effect of the financial reports. Plaintiff has not explained why the class period should extend through March 17, 1984; however, defendant, has not pointed to an alternative class period. Thus, I will permit the parties to submit an additional memorandum addressing the question of a suitable class period.

### ORDER

AND NOW, this 29th day of June, 1987, upon consideration of plaintiffs' motion for

class certification, this action shall be maintained as a class action pursuant to rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. Final determination of the class is continued until calculation of the appropriate class period.

It is further ordered that within twenty days from the date of this order, each party shall file a supplemental memorandum in support of their proposed class period.