George H. KEYSER, et al., Plaintiffs,

v.

**COMMONWEALTH NATIONAL FINANCIAL CORP., et al., Defendants.**

Civ. No. 85–1853.

United States District Court, M.D. Pennsylvania.

Aug. 4, 1988.

David Aufhauser, Williams & Connolly, Washington, D.C., John Havas, Harrisburg, Pa., for plaintiffs.

Walter T. McGough, Anthony J. Basinski, Pittsburgh, Pa., Robert B. Hoffman, Harrisburg, Pa., for Mellon Bank Corp.

Philip Baskin, Charles Falk, Baskin, Flaherty, Elliott & Mannino, Pittsburgh, Pa., and Edward F. Mannino, Gary R. Leadbetter, Baskin, Flaherty, Elliott & Mannino, Jon A. Baughman, Joyce K. Hackenbrach, Seth D. Linfield, Pepper, Hamilton & Scheetz, Philadelphia, Pa., Lewis S. Kunkel, Jr., Pepper, Hamilton & Scheetz, Harrisburg, Pa., for Com. Nat. Financial Corp., individual director defendants.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

This case arises out of events which occurred primarily from September through December of 1985 and led to the merger between Commonwealth National Financial Corporation (Commonwealth) and Mellon Bank Corporation (Mellon). Mr. Keyser and Mr. Shearer, the named plaintiffs, were shareholders of Commonwealth prior to the merger. Their allegations and the history of this case have been set forth at length in previous opinions of this court. *See* documents 51, 111 and 127 of the record.[1] In brief, the named plaintiffs maintain that the Commonwealth defendants failed to maximize price by pursuing overtures from another potential suitor, Meridian Bancorp., Inc. (Meridian), and that the defendants, in seeking approval of the merger from Commonwealth's shareholders, collectively caused the issuance of misleading proxy materials which did not adequately disclose the existence of and details surrounding Meridian's overtures. The complaint asserts causes of action under sections 10(b) and 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78n(a) and rules and regulations promulgated thereunder (counts I and II), common law fraud (count III) and breach of fiduciary duties to shareholders (count IV) and to the corporation (count V).

Presently before the court is the named plaintiffs' motion for class certification[2] and their motion to compel production of shareholder and transactional lists. For the reasons set forth below, these motions will be granted.

### I.

By Memorandum and Order dated March 31, 1988, the court addressed those issues relating to the motion for class certification which were ripe for disposition at that time.[3] *See* document 127. The court, how-

---

1. The corresponding citations are 644 F.Supp. 1130 (M.D.Pa.1986); 675 F.Supp. 238 (M.D.Pa. 1987); and 120 F.R.D. 489 (M.D.Pa.1988).

2. In their motion for class certification which was filed on March 19, 1986 and in their original supporting brief, the named plaintiffs requested class certification "pursuant to Rules 23(b)(1) and 23(b)(2), or alternatively 23(b)(3)." *See* document 46 at 4. However, in their complaint and in their most recent brief, they seek class certification pursuant to Rule 23(b)(3) alone. *See* complaint at ¶ 23 and document 132 at 26. The court, then, will review the certification request under Fed.R.Civ.P. 23(a) and 23(b)(3).

The named plaintiffs seek to represent one class of former Commonwealth shareholders

for all of the causes of action. *See* document 132 at 3.

3. In its March 31, 1988 Memorandum and Order, the court noted that the defendants in their reply brief had raised for the first time a number of new objections to class certification, including the following: plaintiffs cannot recover twice for the same injury, *see* 15 U.S.C. § 78bb(a); conflicting interests between the former Commonwealth shareholders who received cash for their Commonwealth shares and those who received Mellon stock as a result of the merger; and a potential conflict of interest if the named plaintiffs represented in the proposed class action those persons who held Commonwealth shares during the period of September 25, 1985 through December 30, 1985 while

ever, refrained from ruling on the class certification request since the defendants expressed a desire to raise additional arguments against class certification, and a briefing schedule was established.

The defendants filed a joint memorandum in opposition to the motion for class certification on April 4, 1988.[4] *See* document 128. They submitted a supplemental memorandum on April 19, 1988. *See* document 131. The named plaintiffs filed a responsive brief on May 10, 1988. *See* document 132. The defendants replied by letter dated May 20, 1988, and the named plaintiffs responded by letter dated May 24, 1988. *See* documents 133 and 134, respectively.

In their filings subsequent to the March 31, 1988 Memorandum and Order, the defendants focus "on the requirements of Fed.R.Civ.P. 23(a), particularly the typicality requirement" of Rule 23(a)(3).[5] *See* document 128 at 1. The defendants argue, "In the present case, ... defenses unique to the named plaintiffs threaten to become the 'major focus of the litigation' and, therefore, class representative status should be denied them." *Id.* at 5. First, the defendants maintain that the named plaintiffs are atypical of the proposed class because the named plaintiffs are sophisticated shareholders possessing extensive familiarity with the banking industry. Next, the defendants point to deposition testimony wherein the named plaintiffs indicated that they had tracked the merger discussions between Meridian and Commonwealth through articles appearing primarily in the *Wall Street Journal.* The defendants conclude from this information that the named plaintiffs are uniquely sub-

ject to defenses relating to reliance. Again utilizing the deposition testimony to establish nonreliance, the defendants contend that the named plaintiffs would have voted against the Mellon/Commonwealth merger regardless of any misrepresentations or omissions in the proxy materials because Mr. Keyser and Mr. Shearer had possessed a strong desire to keep Commonwealth independent. Further, the defendants assert that the named plaintiffs suffered no injury as a result of the proxy materials since the named plaintiffs did in fact vote against the merger. Also, the defendants note that justifiable reliance is an element of the state law claims, and they reason that the state law claims are inappropriate for class certification because individualized determinations of reliance would impose an excessive managerial burden on the court. Finally, the defendants argue that the named plaintiffs "are subject to unique defenses because of their failure to seek their appraisal rights under the provisions of Section 515 of the Pennsylvania Business Corporation Law ..., 15 P.S. § 1515 (1987)." *See* document 131 at 2.

"Class actions are a particularly appropriate and desirable means to resolve claims based on the securities laws, 'since the effectiveness of the securities laws may depend in large measure on the application of the class action device.' " *Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985) (quoting *Kahan v. Rosenstiel,* 424 F.2d 161, 169 (3d Cir.), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970)). "At the certification stage, the requirements of rule 23, not the

---

simultaneously representing in the derivative action those persons entitled to recover thereunder, *viz.,* those who held Commonwealth shares on the date on which the merger was consummated, April 7, 1986. *See* document 127 at 6–7. The court declined to address these issues at that time inasmuch as the named plaintiffs did not have an adequate opportunity to respond. However, the court expressly allowed the defendants to reassert these contentions through additional briefing, and the court specified certain concerns which the defendants should address if they wished to pursue these objections. *Id.* at 6 n. 5, 11–12. The defendants did not

reassert these objections to class certification in their subsequent briefs. *See infra* note 5.

**4.** The defendants' memorandum apparently crossed in the mail with the March 31, 1988 Memorandum and Order.

**5.** Since the defendants did not pursue by additional briefing any of the objections to class certification listed in footnote 3, *supra,* the court deems those contentions waived. This opinion, then, concentrates on the question of whether the named plaintiffs satisfy the typicality requirement of Rule 23(a)(3).

# 646

merits of the case, are at issue." *Gruber v. Price Waterhouse,* 117 F.R.D. 75, 78 (E.D.Pa.1987).

▇▇ Rule 23(a)(3) requires that the claims of class representatives be typical of those of the class, and "typical" in this context does not mean "identical."[6] *Gruber,* 117 F.R.D. at 79. The prerequisite of typicality "has been employed 'to screen out class actions when the factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are raised.'" *Mays v. Scranton City Police Dept.,* 87 F.R.D. 310, 315–16 (M.D. Pa.1979) (Nealon, C.J.) (quoting 7 C. Wright & A. Miller, Federal Practice and Procedure § 1764 (1972)). The inquiry under Rule 23(a)(3) is whether "the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Weiss v. York Hospital,* 745 F.2d 786, 809 n. 36 (3d Cir.1984), *cert. denied,* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). "Where it is found that a substantially different quantum of proof is required for the named representative than for the other members of the proposed class or that 'a major focus of the litigation will be on an arguable defense unique to the named plaintiff' class certification should be denied." *Mays,* 87 F.R.D. at 316 (quoting *Amswiss International Corp. v. Heublein, Inc.,* 69 F.R.D. 663, 667 (N.D. GA 1975)).[7]

The defendants' objections to class certification based upon the typicality requirement of Rule 23(a)(3) will be treated *seri-atim.* At this point, the court makes the general observation that the defendants read the typicality requirement too rigidly. The defenses which they wish to assert against the named plaintiffs are not unique to the class representatives but are applicable to the entire class, and examining these defenses to the degree sought by the defendants would inevitably involve the court in the merits of this case, a road to be avoided during class certification determinations.

*The Named Plaintiffs' Sophistication*

▇ The defendants seem to infer, without explanation, that the named plaintiffs' sophistication alone renders them atypical of the proposed class.[8] The named plaintiffs' familiarity with the banking industry does not, by itself, contravene the purpose of the typicality requirement. Rule 23(a)(3) directs that the *claims* of the class representatives be typical of the *claims* of the class members, not that there be a similarity of personal backgrounds or knowledge among these individuals. *See, e.g., Priest v. Zayre Corp.,* 118 F.R.D. 552, 555 (D.Mass.1988) ("Sophistication does not make a plaintiff devoid of protection under the securities laws (citation omitted) or immune to injury by misrepresentation (citation omitted)"); *Levit v. Katchmark,* No. 82–3955, slip op. (E.D.Pa. May 13, 1983) ("Where the public market of a quoted security is polluted by false information, or where price, supply and demand are distorted as a result of misleading omissions, all types of investors are injured, experienced and inexperienced, smart and stupid"). In the present case, the named

**6.** "The typicality requirement of 23(a)(3) has often been equated with the requirement of 23(a)(4) that the representative party must adequately represent the class. Both requirements are intended to insure that plaintiff will present the claims of class members. By requiring typicality, the Rule insures that each class member's claim will be represented. The adequate representation requirement goes toward insuring that the plaintiff's interests are not adverse to the other class members and that the representative's interests are co-extensive with those of other members." *Cohen v. Uniroyal, Inc.,* 77 F.R.D. 685, 691 (E.D.Pa.1977) (citing 3B Moore's Federal Practice ¶ 23.06–2 at 23–325 (1972)).

**7.** In *Mays,* this court found that the plaintiff was not a member of the class which he sought to represent.

The named plaintiffs acknowledge the broad proposition that "class certification should be denied when the named plaintiffs are subject to 'unique defenses' that will become a major focus of the litigation." *See* document 132 at 7.

**8.** Mr. Keyser and Mr. Shearer have been involved in the banking industry for several years, serving on various bank boards and committees and acquiring significant portfolios of bank stocks.

plaintiffs' claims are typical of those of the proposed class inasmuch as—if the allegations in the complaint are true—all of these claims arose out of the same acts or omissions of the defendants, resulted in similar financial injury and are grounded upon the same legal theories.

### Actual Knowledge of Meridian's Overtures

■ Building upon their position that the named plaintiffs are uniquely sophisticated shareholders, the defendants argue that the named plaintiffs are atypical of the proposed class since they had actual knowledge of Meridian's overtures through newspaper articles and, therefore, did not rely upon any omissions or misrepresentations in the proxy materials. In their depositions, the named plaintiffs testified that they had followed the courting between Meridian and Commonwealth through press accounts appearing primarily in the *Wall Street Journal*.[9] The defendants contend that this knowledge negates any

defects in the proxy materials as far as the named plaintiffs are concerned, thereby uniquely subjecting Mr. Keyser and Mr. Shearer to the defense of nonreliance.

The court finds the defendants' reasoning unpersuasive. Certainly, the named plaintiffs' sources of information regarding Meridian's overtures were not confidential; rather, their primary source, the *Wall Street Journal*, is commonly recognized as a publication of nationwide circulation which offers investment advice to shareholders and potential shareholders of widely varying degrees of sophistication. In short, it is fair to assume that the same information read by the named plaintiffs was publicly available to and reached many other Commonwealth shareholders.[10] In view of the widespread availability of this information, the court is unable to conclude that the named plaintiffs are atypical of the proposed class because they are uniquely subject to the defense of nonreliance due to actual knowledge of Meridian's overtures.[11] Moreover, there has been no

---

9. For example, Mr. Keyser stated:
   Well, I think I can explain it to you best by saying that I had read about this offer that Meridian had made to Commonwealth, the one that was the 12th and then on the 18th where it was turned down and so forth and then that there had been a new offer made. I mean, this came through in the Wall Street Journal and so forth. I had read this.
   *See* Keyser dep. tr. at 59. Mr. Shearer explained:
   Q  The first Meridian offer of September 12, 1985, did you learn about that on or about that time?
   A  Yes, on or about that time.
   Q  How did you learn about it?
   A  I think I learned about it initially—I was going to say I probably read about it in the paper but I may have heard a rumor about it prior to that time from one of these sources that I just described.
   Q  Were there newspaper articles as you recall at that time?
   A  I don't know when the newspaper articles first came, it was in September.
   Q  Were there more than one?
   A  I saw more than one, yes.
   Q  What newspaper did you see these in?
   A  I saw them from the local newspaper, I saw them from the Wall Street Journal.
   \*    \*    \*    \*    \*    \*
   Q  Accepting that Commonwealth rejected Meridian's initial offer on or about September 19, 1985, and you testified that you were

aware of that rejection around September 19th, 1985.
   A  I probably was not aware of it until it became—in news articles, I had no personal knowledge of it, specifically when it happened.
   *See* Shearer dep. tr. at 207–08, 210. The court notes that none of the newspaper articles in question have been provided for its review.

10. The court must resort to a reasonable assumption since an individualized inquiry of the proposed class as to what information each Commonwealth shareholder had received—which would be inextricably intertwined with the merits of the case—is impossible, at least at this stage of the proceedings. To borrow language from a recent Supreme Court opinion, requiring an individualized inquiry on the reliance issue would preclude a class action in this litigation "since individual issues then would ... overwhel[m] the common ones." *Basic, Inc. v. Levinson*, — U.S. —, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988).

11. Having found that reading such publications as the *Wall Street Journal* does not make the named plaintiffs atypical, the court, in addressing the class certification motion, need not discuss the substantive issue of whether the presumption of reliance upon misleading proxy materials under federal securities law is overcome by the dissemination of more complete and accurate information in the press. For in

showing that the newspaper articles concerning Meridian's overtures contained such detailed information as to place the named plaintiffs in a different position from class members who also may have had some general knowledge relative to a proposed acquisition. The defense of nonreliance based upon press accounts would be more appropriately raised against the class as a whole rather than just Mr. Keyser and Mr. Shearer.[12]

### Additional Grounds for Nonreliance Defense

The defendants also maintain that the named plaintiffs are uniquely subject to the defense of nonreliance, and thus are atypical of the proposed class, because they would have voted against the Mellon/Commonwealth merger regardless of any misrepresentations or omissions in the proxy materials[13] and because they did in fact vote against the merger.[14] In *Kohn v. American Metal Climax, Inc.,* 458 F.2d 255, 269 (3d Cir.), *cert. denied,* 409 U.S. 874, 93 S.Ct. 120, 34 L.Ed.2d 126 (1972), the Third Circuit rejected a similar argument by stating:

[W]e do not believe it is a defense to a finding of material violations of 10b–5 to say that some stockholders "discovered" the misrepresentations before the vote and thus were not misled, and therefore, since they were the class representatives, the entire class is precluded from obtaining any remedy (citation omitted). We think those alleging a violation of Rule 10b–5 have an obligation to show a fraudulent and material misrepresentation and that, to the extent a reliance factor is required, in the present context it is encompassed by the finding that the misrepresentation was material.[15]

■■■ Against the background of the *Kohn* decision, this court again finds unpersuasive the defendants' contention that the named plaintiffs are atypical of the proposed class because they are uniquely subject to the defense of nonreliance. The court reiterates that it will not, at least at this stage in the litigation, attempt the formidable task of making individualized determinations of reliance upon the proxy materials for the sake of comparing the degrees of reliance between the class representatives and the members of the class.

---

depth discussions of the presumption of reliance, see *Basic, Inc. v. Levinson, supra; Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

**12.** As the named plaintiffs correctly point out in their brief, *see* document 132 at 9–11, the Supreme Court over the past twenty-five years has made stockholders as a group, not individual stockholders, the focal point of federal securities actions based on defective proxy statements. *See, e.g., J.I. Case Co. v. Borak,* 377 U.S. 426, 432, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964) ("The damage suffered results not from the deceit practiced on [an individual shareholder] alone, but rather from the deceit practiced on the stockholders as a group").

**13.** During their depositions, both Mr. Keyser and Mr. Shearer firmly stated their beliefs that Commonwealth should have remained independent. *See* Shearer dep. tr. at 217 and Keyser dep. tr. at 185–89, 208. Nonetheless, how Mr. Keyser and Mr. Shearer would have voted if additional information was provided in the proxy materials is purely guesswork.

**14.** A meeting was conducted on December 30, 1985 to solicit shareholder approval of the Mellon/Commonwealth merger. Seventy percent (70%) of the eligible voting shareholders casted their votes. Of the seventy percent (70%) of the votes cast, ninety-four percent (94%) voted in favor of the merger. *See* document 51 at 19.

**15.** The *Kohn* rationale appears equally applicable in the context of § 14(a).

Any question over the named plaintiffs' standing because they voted against the merger is resolved by the decision in *Palumbo v. Deposit Bank,* 758 F.2d 113 (3d Cir.1985). In that case, the plaintiff attempted to avoid the district court's adverse decision by attacking on appeal his own standing before the district court, maintaining that "a shareholder may only seek redress by direct action under § 14(a) if his injury flows from having acted in reliance on the misleading statements." *Id.* at 116. The Third Circuit commented, "We disagree. Standing depends on injury, and we believe that one who alleges that he has been wrongfully ousted from a Board of Directors because management improperly persuaded other shareholders not to vote for him, has articulated an injury cognizable under § 14(a)." *Id.* In the present case, the named plaintiffs allegedly suffered financial injury because the proxy materials were defective, causing other shareholders to approve the merger.

Such procedure would impermissibly plunge the court into the merits of the case. In short, the issue for consideration is whether ·on the present record the defense of nonreliance is unique to the named plaintiffs, and the court has little trouble concluding that the defense of nonreliance would be more appropriately asserted against the entire class, not just the class representatives. A contrary ruling would lead to the anomalous result wherein the named plaintiffs could not represent the proposed class members, whose claims would then be effectively precluded from ever being litigated, even though (1) both groups allegedly suffered comparable financial injuries [16] resulting from the same acts or omissions of the defendants, (2) both groups would proceed on the same legal bases and (3) the defense of nonreliance could be asserted against both groups. The typicality requirement of Rule 23(a)(3) was not intended to foster such a result.

*Common Law Claims*

■ Recognizing that common law security claims do not afford any presumption of reliance to the plaintiffs, the defendants object to class certification of the common law claims in this case because the "possibility of individualized determinations" would impose an "excessive managerial burden upon the court." *See* document 128 at 14. It is fundamental that plaintiffs bringing common law securities claims must prove direct reliance since the fraud-on-the-market theory is unavailable for those claims. *Peil v. Speiser*, 806 F.2d 1154, 1163 n. 17 (3d Cir.1986). "There is no consensus among the federal courts as to the propriety of certifying Fed.R.Civ.P. 23(b)(3) classes in common law securities fraud cases, even when such claims are pendent to 10b–5 claims." *Id.* at 1159. While not ruling on this point, the Third Circuit in *Peil* remarked, "We are less certain that the [district] court was correct in decertifying the class with respect to the common law claims." *Id.* at 1159 n. 8.

■ Other decisions are instructive on the issue of whether pendent common law securities claims should be certified. For example, in *Eisenberg v. Gagnon*, 766 F.2d at 786, our court of appeals noted, "The presence of individual questions as to the reliance of each investor does not mean that the common questions of law or fact do not predominate over questions affecting individual members as required by Rule 23(b)(3)." The court of appeals then cited with approval the decision in *Sharp v. Coopers & Lybrand*, 70 F.R.D. 544 (E.D.Pa. 1976), *aff'd*, 649 F.2d 175 (3d Cir.1981), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982), which held that questions of individual reliance can be handled efficaciously by holding separate hearings. *See also Basic, Inc. v. Levinson*, — U.S. —, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988) ("Requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would have prevented respondents from proceeding with a class action, since individual issues then would have overwhelmed the common ones"). In *In Re Orfa Securities Litigation*, 654 F.Supp. 1449, 1461 (D.N.J.1987), the court, certifying a class for common law claims which were pendent to federal securities law claims, remarked, "[Q]uestions of actual reliance do not render class treatment of the pendent claims unworkable.... Considering the total lack of personal contact between the defendants and class members, the actual reliance argument will not be amenable to significant variation among class members. This court simply does not see actual reliance as an issue requiring such a level of individualized attention that class certification is inappropriate."

This court likewise finds that individual questions of reliance do not defeat class certification for pendent common law securities claims. The question of the defendants' liability on these claims is common to the whole class, and there is no indication in the record that either the named plain-

---

**16.** Although the Commonwealth shareholders owned differing amounts of stock, the loss per share, if any, would be the same.

tiffs or any members of the proposed class possessed any information which would have diffused the alleged defects in the proxy materials. The following passage from *Gruber v. Price Waterhouse*, 117 F.R.D. at 81, is insightful:

> The fraud and deceit claims are based solely on the alleged misrepresentations or omissions contained in the public offering materials. Thus, class certification is particularly appropriate since there are no individual questions regarding fraud or misrepresentation. Proof that a material misrepresentation was made and that defendant intended the representation to be made will be common to all members of the class. Moreover, these elements as well as the question of damages are common to both the federal and state law claims....
>
> Finally, there are no allegations that defendant made any oral or personal representations; the issue will be limited to whether plaintiffs' relied on the audited financial statements and the unqualified report contained in the public offering materials. It does not appear that this inquiry will require a heightened degree of individualized attention nor has defendant alleged the presence of unusual or particularized questions regarding reliance. Thus, I find that common questions of law and fact predominate over questions of actual individual reliance.

This court concludes, then, the common law claims in this case are appropriate for class certification despite the fact that the plaintiffs must prove direct reliance to recover on these claims.

---

**17.** The defendants cite the decision in *In Re Jones & Laughlin Steel Corp.*, 488 Pa. 524, 412 A.2d 1099 (1980), for the proposition that "the *exclusive* post-merger remedy for a dissenting shareholder is the procedure set forth in the [Pennsylvania Business Corporation Law] for the valuation of the shareholder's shares even where the plaintiff has alleged breaches of fiduciary duty in connection with a merger." *See* document 131 at 2. The named plaintiffs argue that the defendants have misinterpreted the *Jones* decision which "merely stands for the proposition that the appraisal court does not have jurisdiction over nonappraisal issues." *See* document 132 at 20.

*Failure to Seek Appraisal Rights*

■ Lastly, the defendants maintain that the named plaintiffs are subject to unique defenses on their common law claims because Mr. Keyser and Mr. Shearer did not seek their appraisal rights under section 515 of the Pennsylvania Business Corporation Law, 15 P.S. § 1515 (1987).[17] The defendants do not indicate whether any Commonwealth shareholders actually sought their appraisal rights.[18] The named plaintiffs, on the other hand, represent that they "have examined the records of the Dauphin County Court of Common Pleas and have determined that there has been no litigation [—at least in Dauphin County—] regarding appraisal rights for Commonwealth shares arising out of the merger." *See* document 132 at 18. In view of this information, the court finds that the defense of failure to seek appraisal rights is not unique to the named plaintiffs and does not render them atypical of the proposed class.[19]

In conclusion, having carefully reviewed all of the documents submitted by the parties on the pending motion for class certification, the court is convinced that the named plaintiffs have demonstrated that they satisfy all of the requirements of Rules 23(a) and 23(b)(3). Therefore, the motion for class certification will be granted.

## II.

There remains a dispute over the temporal parameters which should be used to define the class. The named plaintiffs seek to represent one class "consisting of all persons or entities who owned common

---

**18.** The defendants have not contested the named plaintiffs' allegation that conclusive information indicating which Commonwealth shareholders, if any, sought their appraisal rights is available only to the defendants.

**19.** In ruling that the named plaintiffs' failure to seek their appraisal rights does not render them atypical pursuant to Rule 23(a)(3), the court will not address the merits of the defendants' assertion that the appraisal route was the plaintiffs' exclusive remedy. *See supra* note 17.

shares of Commonwealth at any time from September 25, 1985 through December 30, 1985, other than any of the defendants and certain 'key employees' of Commonwealth who were entitled to or held stock options covering 79,000 shares of Commonwealth stock." *See* document 132 at 3–4. The former date marks the day on which, according to the named plaintiffs, the Commonwealth board of directors decided that Commonwealth could no longer remain independent and was up for sale, thereby obligating the directors to get the best possible price per share. The latter date is the day on which Commonwealth's shareholders approved the merger, purportedly at an undervalued price because of material misrepresentations and/or omissions in the proxy materials.

The defendants counter that the class should be limited to those individuals who held Commonwealth shares as of November 15, 1985, the record date that was used to determine both to whom the proxy materials would be sent and who would possess voting rights when the merger question came to a vote.[20] In their initial joint memorandum subsequent to the March 31, 1988 Memorandum and Order, the defendants addressed the parameters of the class only in terms of the federal law claims. In summary, they contend that for purposes of section 10(b), only those persons who received the proxy materials could have based any decision on the alleged misrepresentations and omissions, and that for purposes of section 14(a), only those shareholders with voting rights on the merger question could have standing. *See* document 128 at 14–16. The defendants did not discuss the parameters of the class in their next brief (document 131), but in their latest filing (document 133), they for the first time address the scope of the class in relation to the common law claims and, without citing supporting authority, argue that *"after* the price was set ... the defendants could not have owed a duty to those who were not yet shareholders" (emphasis in original). *See* document 133 at 2. The named plaintiffs have not responded to the particular objections raised by the defendants to the scope of the class.

The issue of the temporal parameters of the class has not received adequate treatment from the parties in their briefs. The court, however, wishes to avoid further delay on the class certification issue as it desires to promptly move this case toward a position of readiness for trial. Therefore, the court will define the class in the broad terms suggested by the named plaintiffs, subject to possible redefinition or subdivision upon subsequent briefing and/or argument.[21]

The only remaining matter before the court is the named plaintiffs' motion to compel the production of shareholder and transactional lists. In light of the court's decision on the class certification motion, the discovery motion will be granted insofar as it relates to the period from September 25, 1985 through December 30, 1985.

An appropriate Order will enter.

### ORDER

NOW, this 4th day of August 1988, in accordance with the terms of the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

(1) The named plaintiffs' motion for class certification pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3) is granted, and the named plaintiffs are certified as the representatives of a class consisting of all persons or entities who owned common shares of Commonwealth at any time from September 25, 1985 through December 30, 1985, other

---

**20.** The proxy materials were mailed to Commonwealth shareholders on November 25, 1985.

**21.** Should the dispute over the temporal parameters of the class resurface, the parties should address, *inter alia,* the following concerns: Can a shareholder who sold his/her stock before the proxy materials were distributed be included in the class for purposes of the federal law claims?

Did the Commonwealth defendants owe a *continuing* common law duty to all Commonwealth shareholders up to December 30, 1985? Is a section 14(a) action limited to those shareholders who had voting rights? Can an individual who becomes a shareholder after the proxy materials were distributed bring a section 10(b) claim?

than any of the defendants and "key employees" of Commonwealth who were entitled to or held stock options covering 79,000 shares of Commonwealth stock.

(2) The named plaintiffs' motion to compel the production of shareholder and transactional lists is granted insofar as it pertains to the period of September 25, 1985 through December 30, 1985, and the defendants are directed to produce the pertinent documents forthwith.

(3) Within twenty (20) days of their receipt of the shareholder and transactional lists, plaintiffs' counsel shall submit a proposed supplemental order indicating how the class members will be notified of this litigation and how the class members may "opt out" of this action.

Plaintiffs' counsel shall also provide a complete list of all members of the class, and plaintiffs' counsel shall subsequently update this list after the "opt out" period has expired.

(4) Defense counsel will be afforded fifteen (15) days from their receipt of the proposed supplemental order and list of class members to comment thereon.